THE STATE OF OHIO, APPELLEE, *v.* BURGUN, APPELLANT.
THE STATE OF OHIO, APPELLEE, *v.* BAYLESS, APPELLANT.
THE STATE OF OHIO, APPELLEE, *v.* TUROSO, APPELLANT.
THE STATE OF OHIO, APPELLEE, *v.* KRUTE, APPELLANT.

(Nos. 77-1144, 77-1154, 77-1155, 77-1279—Decided December 7, 1978.)

*Ms. Almeta A. Johnson,* police prosecutor, *Bertsch, Edelman & Fludine Co., L. P. A.,* and *Mr. Bruce A. Taylor,* for appellee.

*Messrs. Berkman, Gordon, Kancelbaum & Levy, Mr. Bernard A. Berkman* and *Mr. Joshua J. Kancelbaum,* for appellants.

CELEBREZZE, J.

## I.

The appellants have raised seven propositions of law. The first four propositions apply to all four appeals. Propositions No. 5 and 6 apply only to *State* v. *Burgun*, case No. 77-1144, and likewise proposition No. 7 is concerned solely with *State* v. *Krute*, case No. 77-1279.

In their first proposition of law, appellants contend that the definition of obscenity contained in R. C. 2907.01 (F) and incorporated in R. C. 2907.32 (A) (4) is both overbroad and vague and therefore in violation of their rights under the First and Fourteenth Amendments to the United States Constitution. The definition of "obscenity" set forth in R. C. 2907.01 (F) reads as follows:

"When considered as a whole, and judged with reference to ordinary adults or, if it is designed for sexual deviates or other specially susceptible group, judged with reference to such group, any material or performance is 'obscene' if any of the following apply:

"(1) Its dominant appeal is to prurient interest;

"(2) Its dominant tendency is to arouse lust by displaying or depicting sexual activity, masturbation, sexual exictement, or nudity in a way that tends to represent human beings as mere objects of sexual appetite;

"(3) Its dominant tendency is to arouse lust by displaying or depicting bestiality or extreme or bizarre violence, cruelty, or brutality;

"(4) Its dominant tendency is to appeal to scatological interest by displaying or depicting human bodily functions of elimination in a way which inspires disgust or revulsion in persons with ordinary sensibilities, without serving any genuine scientific, educational, sociological, moral, or artistic purpose;

"(5) It contains a series of displays or descriptions of sexual activity, masturbation, sexual excitement, nudity, bestiality, extreme or bizarre violence, cruelty, or brutality, or human bodily functions of elimination, the cumulative effect of which is a dominant tendency to appeal to prurient or scatological interest, when the appeal to such

interest is primarily for its own sake or for commercial exploitation, rather than primarily for a genuine scientific, educational, sociological, moral, or artistic purpose."

The definition is incorporated into R. C. 2907.32(A) (4) which formed the basis for the prosecution in the present appeals and states, in pertinent part:

"(A) No person, with knowledge of the character of the material or performance involved, shall do any of the following:

"* * *

"(4) Advertise an obscene performance for presentation, or present or participate in presenting an obscene performance, when such performance is presented publicly, or when admission is charged * * *."

The essence of the appellants' criticism is that the definition in R. C. 2907.01 (F) is overbroad "on its face" because an item can be considered "obscene" if *any* of the characteristics outlined in subsections (1) through (5) are present. Since the statute is written in disjunctive rather than conjunctive language, it is alleged that a conviction can be obtained without a finding that the *tripartite* test in *Miller* v. *California* (1973), 413 U. S. 15 has been satisfied.

In that case the United States Supreme Court, at pages 24-25, described the permissible scope of state regulation of obscenity and the three-pronged inquiry to be adopted by the trier of fact as follows:

"* * * As a result, we now confine the permissible scope of such regulation to works which depict or describe sexual conduct. That conduct must be specifically defined by the applicable state law, *as written or authoritatively construed.* A state offense must also be limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value.

"The basic guidelines for the trier of fact must be: (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a

whole, appeals to the prurient interest * * *; (b) whether the work depicts or describes in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. * * * If a state law that regulates obscene material is thus *limited, as written or construed*, the First Amendment values applicable to the States through the Fourteenth Amendment are adequately protected by the ultimate power of appellate courts to conduct an independent review of constitutional claims when necessary." (Citations omitted; emphasis added.)

In addition to the criticism that subsections (1) through (5) do not facially incorporate the three-part *Miller* test, the appellants have asserted other instances where the statute conflicts with that decision. It is argued that subsection (3) unconstitutionally restricts the depiction of extreme violence when only material depicting or describing sexual conduct may be limited as being obscene. In addition, appellants argue that subsections (1), (2), (3) and (5) are facially overbroad because acts of " ' simple nudity ' " as opposed to hard core pornography can also be considered to be " 'obscene.' " Likewise, what is meant by material whose " 'dominant appeal is to prurient interest' " is cited as a further example of unconstitutional overbreadth. Finally, it is argued that the general lack of specificity found in R. C. 2907.01(F) warrants not only a finding of unconstitutional overbreadth but also a determination that the entire statute is void for vagueness.

In summary, appellants allege in effect that the statute not only has not been "limited, as *written*," in light of the *Miller* guidelines but also is incapable of a "narrowing *construction*" in conformity with that decision. We disagree.

The United States Supreme Court did not intend for every state legislature to rewrite its obscenity statutes as a result of the *Miller* decision. As indicated, an "authoritative construction" of applicable state law limiting the regulation of obscenity by the guidelines in that decision would be constitutionally sufficient.

Following that mandate this court was faced with a construction of the predecessors to the statutes under attack in the present case, R. C. 2905.34 and 2905.35, immediately following the *Miller* decision in *State, ex rel. Sensenbrenner*, v. *Book Store* (1973), 35 Ohio St. 2d 220 and *State, ex rel. Keating*, v. *Vixen* (1973), 35 Ohio St. 2d 215.[1]

In *Vixen* this court held, at page 219, that the statutory definitions "comport with the standards enunciated in *Miller.*" Similar language is found in *Sensenbrenner*, at page 221, where this court indicated:

"It is apparent that, if these causes were remanded to the Court of Common Pleas, the trier of the facts, given the standards expressed in *Miller* and the provisions of R. C. 2905.34 as guides for determining the issue of obscenity, could come to no other conclusion than the one reached in the first instance." The application of the *Miller* guidelines to Ohio obscenity law was also noted by this court in *State, ex rel. Ewing*, v. *Without a Stitch* (1974), 37 Ohio St. 2d 95. In that case, the appellants had attacked the definition of nuisance contained in R. C. 3767.01 (C) which, in turn, had incorporated the definition of obscenity upheld in *Vixen*, *supra.* This court repeated its prior holding and stated once again, at page 101, that "the definition of obscene material contained in R. C. 2905.34 comports with the con-

---

[1] R. C. 2905.34(A)(1) through (4) stated, in pertinent part:

"(A) Any material or performance is 'obscene' if, when considered as a whole and judged with reference to ordinary adults, *any of the following apply*:

"(1) Its dominant appeal is to prurient interest;

"(2) Its dominant tendency is to arouse lust by displaying or depicting nudity, sexual excitement, or sexual conduct in a way which tends to represent human beings as mere objects of sexual appetite;

"(3) Its dominant tendency is to arouse lust by displaying or depicting bestiality or extreme or bizarre violence, cruelty, or brutality;

"(4) It contains a series of displays or descriptions of nudity, sexual excitement, sexual conduct, bestiality, extreme or bizarre violence, cruelty, or brutality, or human bodily functions of elimination, the cumulative effect of which is a dominant tendency to appeal to prurient interest, when the appeal to such interest is primarily for its own sake or for commercial exploitation, rather than for a genuine scientific, educational, sociological, moral, or artistic purpose." (Emphasis added.)

stitutional definition of the word 'obscenity' as enunciated in *Miller* v. *California* \* \* \*." Subsequently, on April 21, 1975, the United States Supreme Court summarily upheld that decision by dismissing an appeal from one of the defendants for "want of a substantial federal question." *Art Theater Guild, Inc.,* v. *Ewing* (1975), 421 U. S. 923.

The essence of these three Ohio decisions was *not* that the wording of R. C. 2905.34 (A) (1) through (4) *visibly, literally,* or *facially* incorporated the tripartite *Miller* test in *each* of those *subsections.* What this court attempted to spell out was that the wording of the *entire* statute, when construed *in pari materia* with the *Miller* decision, adequately protected the First Amendment values applicable to the states through the Fourteenth Amendment. R. C. 2905.34 contained the same *disjunctive* language currently under attack as well as being more general in its terms and definitions than its successor, R. C. 2907.01 (F).

The United States Supreme Court has recently reinforced its policy of upholding facially overbroad state obscenity statutes that have been "narrowed" by an "authoritative construction" in light of the *Miller* guidelines. In *Ward* v. *Illinois* (1977), 431 U. S. 767, the United States Supreme Court was dealing with a state statute that had been patterned after the test for obscenity enunciated in *Roth* v . *United States* (1957), 354 U. S. 476.[2]

As in the cases before this court, the statute was attacked as being unconstitutionally overbroad and vague. Yet, a close reading of that statute reveals a far more generalized description of obscenity than that found in R. C. 2907.01 (F). The statute reads, in pertinent part:

"A thing is obscene if, considered as a whole, its predominant appeal is to prurient interest, that is, a shameful

---

[2]The importance of *Roth* v. *United States, supra,* was also noted by the General Assembly in the passage of R. C. 2907.01(F) as indicated by the Committee Comment to that statute:

"The definition of obscenity is designed to meet the requirements of *Roth* v. *United States* \* \* \*, and cases following in its wake. It spells out what is 'obscene' in much greater detail than existing case law, in order to increase the utility of the definition for law enforcement purposes."

or morbid interest in nudity, sex or excretion, and if it goes substantially beyond customary limits of candor in desscription or representation of such matters. A thing is obscene even though the obscenity is latent, as in the case of undeveloped photographs." Illinois Rev. Stat., Chapter 38, Section 11-20-(b) (1975).

The United States Supreme Court pointed out that subsequent to the *Miller* decision, Illinois Supreme Court decisions had proceeded to "construe" Section 11-20 of their Criminal Code to "incorporate" the guidelines in that decision. *Id.*, at pages 774-75. As a result of that state Supreme Court's "response to *Miller*," the court indicated, at page 776, that it would not hold the Illinois statute to be "unconstitutionally overbroad."

This court, as previously noted in *Vixen* and *Sensenbrenner, supra,* has followed a somewhat similar "response to *Miller*" in its construction of R. C. 2905.34. Today, that "response" continues with a further clarification by the interpretation and application of its successor, R. C. 2907.-01(F).

We hold that R. C. 2907.01(F) is neither unconstitutionally overbroad nor void for vagueness when it is read *in pari materia* with the *Miller* decision. The *Miller* test for defining obscenity is therefore incorporated into that statute by an "authoritative" state court construction specifically sanctioned by *Miller.* In addition, a close reading of R. C. 2907.01 in its entirety shows that the statute is not vague but rather extremely precise in defining what conduct is prohibited. Thus, since the current statutory definition has been effectively narrowed to constitutionally permitted parameters, the appellants' proposition of law has no merit.

In three of the four appeals before this court the trial court adhered to the foregoing interpretation of Ohio obscenity law. In each instance the jury was instructed initially under the Ohio statute and then given a "narrowing" instruction restricting the definition of obscenity to the test laid down in *Miller.* In light of that interpretation and application of R. C. 2907.01(F) this proposition of law

362

is not well-taken and hereby overruled, except in *State* v. *Burgun*, case No. 77-1144, where the failure to instruct on *Miller* was reversible error.

## II.

In their second proposition of law, the appellants argue that a judge must view films such as these prior to the issuance of any search warrant. Furthermore, if viewing the film is not possible the affidavits which form the basis of a subsequent warrant must reflect facts sufficient to satisfy the *Miller* test.

In order to issue a valid warrant the appropriate judicial officer must be able to " 'focus searchingly on the question of obscenity.' " *Roaden* v. *Kentucky* (1973), 413 U. S. 496, 506. In addition, no cases have been cited where it has been specifically held that a judge or magistrate *must* view an alleged obscene film prior to the issuance of a search warrant. To make that procedure a *mandatory* prerequisite to the issuance of a warrant would place an undue burden on an already overladen criminal justice system.

The affidavits in these cases were complete and specific in describing the sexual activity that took place in the films, as well as containing facts relating to the lack of titles, costs of operation, and running time. Taken as a whole, the affidavits contain sufficient facts to authorize a constitutionally sufficient warrant. *Roaden, supra*; *Heller* v. *New York* (1973), 413 U. S. 483. The Municipal Court judge in each instance herein had a full opportunity to make an independent judicial determination of probable cause prior to issuing the warrants and to "focus searchingly on the question of obscenity" in light of the *Miller* test.

This proposition of law is overruled.

## III.

In their third proposition of law, appellants argue that knowledge of *both* the content and the character of the films is required to satisfy the *scienter* element for pandering obscenity in R. C. 2907.32. In addition, it is alleged that the circumstantial evidence presented at the trials did not support a finding that the appellants had the requisite *mens rea*.

. The requirement of some degree of *scienter* to sustain an obscenity conviction such as those before this court was clearly mandated by *Smith* v. *California* (1959), 361 U. S. 147. However, the United States Supreme Court did not limit the states by spelling out the particular type of *mens rea* that would be constitutionally sufficient.

The predecessor to the current statute on pandering obscenity was R. C. 2905.35, which was specifically worded so as to require "knowledge of the content and character" of obscene material as a prerequisite to prosecution.[a] The necessity of finding knowledge of the "content" of the material was further reinforced by this court's decision in *State, ex rel. Ewing, supra*. However, by requiring that knowledge of the "content" of obscene material is necessary, this court did not imply that there be either knowledge of the *actual* content or the fact that it was *legally* obscene. See *Rosen* v. *United States* (1896), 161 U. S. 29.

The current statute under which these appellants were convicted, R. C. 2907.32(A), describes the requisite element of *scienter* as follows: "No person, with *knowledge of the character of the material or performance involved,* shall do any of the following * * *." (Emphasis added.) Furthermore, R. C. 2907.35(A)(2) describes a situation when a rebuttable presumption of that "knowledge" will arise:

---

[a]R. C. 2905.35 stated, in pertinent part:

"No person, with *knowledge of the content and character of the obscene material or performance involved,* shall make, manufacture, write, draw, print, reproduce, or publish any obscene material, knowing or having reasonable cause to know that such material will be sold, distributed, circulated, or disseminated; or sell, lend, give away, distribute, circulate, disseminate, exhibit, or advertise any obscene material; or write, direct, produce, present, advertise, or participate in an obscene performance; or possess or have in his control any obscene material with intent to violate this section; or offer or agree to do any act in violation of this section, or cause any such act to be done by another.

"Whoever violates this section shall be fined not more than five thousand dollars or imprisoned not more than one year, or both, for a first offense, and for each subsequent offense shall be fined not more than ten thousand dollars or imprisoned not less than one nor more than seven years, or both." (Emphasis added.)

364

"(A) An owner or manager, or his agent or employee, of a bookstore, newsstand, theater, or other commercial establishment engaged in selling materials or exhibiting performances who, in the course of business:

"* * *

"(2) Does any of the acts prohibited by section 2907.-31 or *2907.32* of the Revised Code, is presumed to have *knowledge of the character of the material or performance* involved, if he has *actual notice* of the *nature of such material* or performance, *whether or not he has precise knowledge of its contents.*" (Emphasis added.)

As indicated by the statutory language, "precise knowledge" of *"contents"* is unnecessary and instead the emphasis is on "notice" of the *"nature"* of the material.

Knowledge of the "character" or "nature" of obscene material has been held to be a constitutionally adequate indicium of *scienter* to uphold an obscenity conviction. *Mishkin* v. *New York* (1966), 383 U. S. 502, *rehearing denied* 384 U. S. 934; *United States* v. *Hill* (C. A. 5, 1974), 500 F. 2d 733, *certiorari denied* 420 U. S. 952; *United States* v. *Groner* (C. A. 5, 1974), 494 F. 2d 499, *certiorari denied* 419 U. S. 1010; *United States* v. *Thevis* (C. A. 5, 1973), 484 F. 2d 1149, *certiorari denied* 418 U. S. 932, *rehearing denied* 419 U. S. 886. In light of the foregoing we conclude that "knowledge of the character of the material" is sufficient to sustain a conviction under R. C. 2907.32(A)(4).

In proving a defendant had knowledge of the character of obscene material the state may rely solely on circumstantial evidence. *Smith* v. *California, supra* at page 154; *State* v. *American Theatre Corp.* (1975), 193 Neb. 289, 227 N. W. 2d 390. A survey of the records in these four appeals reveals that the appellants were all involved in the operation of the bookstores as cashiers or clerks. Their position placed them in the front of the premises where they were in full view of sexually oriented magazines, books, artificial sexual aides and related sexual paraphernalia located in display cases. The movies were shown in the rear of the premises in booths with coin-operated projectors.

As employees responsible for selling these materials and dispensing change to customers, the evidence presented

is sufficient so that a jury could have inferred beyond a reasonable doubt that the appellants had knowledge of the character of the films being shown. Appellants' third proposition of law is overruled.

## IV.

In the appellants' fourth proposition of law, claim is made that R. C. 2907.35(C), providing a qualified exemption for projectionists who have neither a financial interest in their place of employment nor any managerial responsibilities over its operation, violates the Equal Protection Clause of the Fourteenth Amendment.

Before an individual can challenge state legislation as violative of the federal constitution he must bring himself within the class affected by the unconstitutional feature. *Arkadelphia Co.* v. *St. Louis S. W. Ry. Co.* (1919), 249 U. S. 134, 149. In other words, a person who is seeking to raise the issue of the validity of a discriminatory enactment has no standing for that purpose unless he belongs to the class which is prejudiced by the statute. *Witham* v. *South Side Bldg. & L. Assoc.* (1938), 133 Ohio St. 560; *Anderson* v. *Brown* (1968), 13 Ohio St. 2d 53.

It is uncontroverted that none of the appellants offered proof at the trial court level to show that they were in a position similar to that of the projectionists. There is insufficient probative evidence in the record to establish that a proper person has brought himself within the class of persons standing in the same position as the statutorily exempted projectionists.

Appellants' fourth proposition of law is overruled.

## V.

Proposition of law No. 5 relates solely to *State* v. *Burgun*, Case No. 77-1144. Appellant Burgun alleges that in a prosecution under R. C. 2907.32 it is error for a trial court to fail to instruct the jury on the definition of obscenity established in *Miller* v. *California, supra.* The trial judge instructed the jury solely under the statute. Pursuant to the discussion in Part I of this opinion the failure to give a narrowing instruction was reversible error.

## VI.

In proposition of law No. 6, appellant Burgun alleges

that it was error for the trial court both to fail to dismiss a complaint under R. C. 2907.32(A)(4) which lacks an allegation that the accused had knowledge of the "content" of the allegedly obscene material and to fail to instruct the jury on the necessity of such knowledge. In light of the discussion of the degree of *scienter* required for a prosecution under this statute in Part III of this opinion knowledge of the "character" of the material is all that is necessary. Appellant Burgun's proposition of law is overruled.

## VII.

The seventh proposition of law relates solely to *State v. Krute,* case No. 77-1279. Appellant Krute argues that certain remarks made by the prosecutor in his closing argument were so prejudicial they deprived him of his right to a fair and impartial trial. The appellant claims the prosecutor urged the jury to convict him to help stamp out obscenity, injected his own personal views, and argued points unsupported by the evidence.

Upon a careful review of the record it is evident, as the Court of Appeals noted, that some of the remarks made by the prosecution were improper. However, there is no evidence in the record that indicates that they were so prejudicial or inflammatory as to deprive this appellant of his constitutional right to a fair trial. This proposition of law is overruled.

The propositions of law that relate to *State v. Bayless,* case No. 77-1154; *State v. Turoso,* case No. 77-1155; and *State v. Krute,* case No. 77-1279 are not well-taken and those judgments are affirmed. Proposition of law No. 5 relating to *State v. Burgun,* case No. 77-1144, is well-taken. The judgment of the Court of Appeals in case No. 77-1144 is reversed and that cause is remanded for a new trial in accordance with the foregoing opinion.

*Judgment accordingly.*

LEACH, C. J., HERBERT, P. BROWN, SWEENEY and LOCHER, JJ., concur

W. BROWN, J., concurs in case No. 77-1144, but dissents in cases Nos. 77-1154, 77-1155 and 77-1279.