THE STATE OF OHIO ET AL., APPELLEES, *v.* BROOKS, A.K.A. JANE DOE, APPELLANT.

(No. 3319—Decided July 30, 1984.)

*James J. Misocky,* law director, for appellee.

*Dennis Haines* and *Barry Laine,* for appellant.

FORD, J. This is an appeal by appellant Jeri Brooks from her conviction for pandering obscenity.

The cause originated in the Niles Municipal Court. Appellant was charged with pandering obscenity in violation of Niles Municipal Ordinance Section 533.12. After her motion to dismiss was denied, the case was tried to a jury which returned a guilty verdict. The trial court fined appellant $1,000, which was stayed pending this appeal.

On February 9, 1983, Thomas Tedesco, a detective in the Niles Police Department, purchased several articles from the Niles Book & News Store. The following day he signed a complaint charging that appellant, while being employed by the Niles Book & News Store, "did sell obscene material to Detective Thomas Tedesco of the Niles Police Dept." A Jane Doe warrant was issued that day, and appellant Jeri

Brooks was arrested. She entered a plea of not guilty to the charge.

In March 1983, appellant Brooks filed a motion to dismiss on the grounds that the articles purchased by Officer Tedesco were not obscene as a matter of law, and that his purchase of the articles without a warrant or a prior judicial determination of obscenity constituted an illegal seizure.

On May 11, 1983, a hearing was held on the motion to dismiss. At the hearing, Officer Tedesco testified and the allegedly obscene articles were introduced. Officer Tedesco testified that he purchased two products — a rubber penis and a female head — at the Niles Book & News Store. Appellant Brooks argued that the articles were not obscene as a matter of law since they did not depict or describe sexual conduct as defined by state law. The trial court denied appellant's motion.

The matter was tried on August 22 and 23, 1983. The only witness for the city was Officer Tedesco. He testified that he purchased a rubber penis and female head from the Niles Book & News Store, obtained a warrant to arrest the individual selling those products, and arrested appellant the following day. On cross-examination, Officer Tedesco acknowledged that he entered the store on three days, that he purchased the articles of his own free will, and that the articles themselves do not show sexual activity.

Appellant objected to the introduction of the rubber products as exhibits since they did not depict sexual conduct. They were allowed into evidence over these objections.

At the conclusion of the state's case, appellant renewed her motion to dismiss. The basis of the motion was that "the material does not depict sexual conduct in accordance with the *Miller* standards and the court has an obligation not to let the jury speculate in light of the established standards." The court overruled the motion.

Appellant Brooks prepared and submitted three proposed jury instructions. The instructions dealt with the standards established by the Supreme Court in *Miller* v. *California* (1973), 413 U.S. 15, the governing decision in the area of obscenity.

The first proposed charge contained the *Miller* standards, and read as follows:

"In order for you to find the Defendant guilty, it is incumbent upon the prosecution to prove, beyond a reasonable doubt, that the objects entered as evidence are obscene. In order to find the objects obscene, you must find that:

"A. The average person, applying contemporary community standards would find that the objects, taken as a whole, appeal to the prurient interest and,

"B. The objects depict or describe, in a patently offensive way, sexual conduct specifically defined under Ohio law, and

"C. The objects, taken as a whole, lack serious literary, artistic, political, or scientific value."

The court's charge provided as follows:

"The following additional factors must be taken into consideration to determine obscenity. According to the basic guidelines for the contemporary community standards you must determine whether the average person applying contemporary community standards would find the objects, taken as a whole, appeal to the prurient interest; whether the objects depict or describe in a patently or offensive way sexual conduct specifically defined by the applicable law. Now, whether the material taken as a whole lacks serious literary, artistic, political or scientific value. All three of these factors must be considered by you in order for you to find that the exhibits involved in this case are obscene."

In her second proposed charge, appellant requested the court to instruct

the jury on the definition of sexual conduct stated in the Ohio Revised Code. The second proposed charge also contained a definition of obscenity as defined under Ohio law. The court did give that portion of the charge. The second proposed charge also stated the statutory definition of sexual conduct and read, in material part:

"You must also find that the objects depict or describe in a patently offensive way, sexual conduct, which is described under Ohio law as follows:

" 'Sexual conduct means vaginal intercourse between a male and female, and anal intercourse, fellatio and cunnilingus between persons regardless of sex.

" 'Penetration, however slight, is sufficient to complete vaginal or anal intercourse.' "

The court refused to include the Ohio Revised Code definition of sexual conduct in final instructions.

Appellant's third proposed charge stated:

"In your deliberations, you must understand that under the present legal standards that are applicable to a case involving material which is alleged to be obscene, no one is to be subject to prosecution for the sale of obscene materials unless those materials depict or describe patently offensive 'hard core' sexual conduct, specifically defined under Ohio law, and there can be no prosecution for simple nudity, nor for violence, nor bizarre conduct alone."

The substantive portion of the charge is taken directly from the *Miller* decision. The court refused to give the instruction.

Appellant also submitted a special verdict form. The verdict form referred to the products purchased by Officer Tedesco, and inquired whether the exhibits:

"* * * depict or describe sexual conduct as defined by the laws of Ohio, that is, does it depict and describe vaginal intercourse between a male and female,

any anal intercourse, fellatio and cunnilingus between persons regardless of sex?"

The language in the special verdict form referred to the definition of sexual conduct contained in the Ohio Revised Code. The court refused to submit the special verdict form to the jury.

Appellant presents the following assignments of error:

"1. The allegedly obscene articles were obtained by the state without a warrant or any judicial determination of obscenity. Accordingly, the charges based on the sale of those articles should have been dismissed and the articles should not have been admitted into evidence.

"2. The articles upon which the charges were based are not obscene as a matter of law and the charges arising out of the sale of those articles should have been dismissed.

"3. The proposed jury instructions and special verdict form focusing upon the essential element of sexual conduct should have been used by the trial court."

Appellant's first assignment of error is without merit. Her assigned error is based on the assumption that the officer's purchases constituted an illegal seizure.

Ohio courts have made a distinction between a sale and a seizure. *State* v. *Dornblaser* (1971), 55 O.O.2d 88, at 91. The case appellant cites in support of her contention is distinguishable from this appeal. *State* v. *Furuyama* (Hawaii 1981), 637 P. 2d 1095, involved a sale where the money used in a purchase was returned. This element led the court to the conclusion that the "purchase" was in reality a prearranged seizure, thus invoking constitutional protection. There is nothing in the record to indicate that such were the facts in this situation. Therefore, the purchase of the items was not a seizure. As the items were obtained by a purchase, appellant was not entitled to those constitutional

safeguards afforded to prearranged seizures. Appellant's assignment of error fails.

*Miller* v. *California* (1973), 413 U.S. 15, defines the permissible perimeters within which the state may regulate obscenity:

"* * * State statutes designed to regulate obscene materials must be carefully limited. See *Interstate Circuit, Inc.* v. *Dallas, supra,* at 682-685. As a result, we now confine the permissible scope of such regulation to works which depict or describe sexual conduct. That conduct must be specifically defined by the applicable state law, as written or authoritatively construed. A state offense must also be limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value.

"The basic guidelines for the trier of fact must be: (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest, *Kois* v. *Wisconsin, supra,* at 230, quoting *Roth* v. *United States, supra,* at 489; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. * * *"

The Ohio statute specifically defining "sexual conduct" is R.C. 2907.01(A), which provides:

" 'Sexual conduct' means vaginal intercourse between a male and female, and anal intercourse, fellatio, and cunnilingus between persons regardless of sex. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."

The Ohio Supreme Court has held that the Ohio statute must be read *in pari materia* with the *Miller* decision. The *Miller* test is, therefore, incorporated into the statute by an authoritative court construction. *State* v. *Burgun* (1978), 56 Ohio St. 2d 354, at 361 [10 O.O.3d 485].

Thus, in a prosecution for pandering obscenity, under state statute as construed to incorporate the *Miller* test, it is incumbent to prove beyond a reasonable doubt:

"(a) The material depicts conduct which is sexual; that is, it depicts vaginal intercourse or any of the other explicit examples expressly set forth in the definition of sexual conduct in section 2907.01(A), or one of the two examples of such conduct as described in *Miller*;

"(b) the sexual conduct depicted is obscene, as that term is expressly defined in section 2907.01(F)(1)-(5); *and*

"(c) the material meets the three guidelines of *Miller,* in that (1) when taken as a whole and applying contemporary community standards, it appeals to the prurient interests of the average person; (2) it depicts or describes, in a patently offensive way, the sexual conduct specifically defined in section 2907.01(A) or in the examples of *Miller;* and (3) taken as a whole, it lacks serious literary, artistic, political, or scientific value." *Turoso* v. *Cleveland Municipal Ct.* (C.A. 6, 1982), 674 F. 2d 486, at 493.

It follows from the above analysis that the purchased articles are not obscene *per se.* The items do not, in and of themselves, describe or depict "hard core sexual conduct" as defined in the Ohio statute and as required by *Miller.* Logically, therefore, when the *Miller* criteria are fused with the applicable Ohio statute, there is a distinction between illegal, obscene pornographic items and depictions, and depictions of sexual conduct which may not be restricted. The distinction depends on whether there is depiction of physical activity, largely because of the Ohio definition of "sexual conduct," whether in still

or graphic form, which is connected with the sexual description or depiction. *Sovereign News Co.* v. *Falke* (N.D. Ohio 1977), 448 F. Supp. 306, at 397:

"When, however, the description or depiction is of sexual conduct without a significant *action* element, *i.e.,* the sexual conduct is of a passive nature, then the description or depiction is not 'hard core' and it may not be banned or restricted."

However, this does not mean that these articles cannot be characterized as obscene under the proper factual circumstances. While appellant's assignment of error is well-taken, to the extent that the items are not obscene *per se,* there remains a factual question as to the sexual conduct, if any, involved in the sale. This factual question was not the subject of proper analysis by the jury because of the lack of a proper legal instruction on this element by the trial court. Thus, appellant's assignment of error is without merit.

Appellant's third assignment of error is equally persuasive.

One prong of the *Miller* test is whether the work depicts or describes sexual conduct specifically defined by applicable state law. The Sixth Circuit Court of Appeals has suggested that the Ohio definition of sexual conduct should be part of the trial court's final charge. *Turoso, supra,* at 494. Ohio's First District Court of Appeals has also held that a jury is not fully instructed unless it hears both the statutory definition and the *Miller* guidelines. *State* v. *Abrams* (July 8, 1981), Hamilton App. No. C-800 410, unreported.

In the present case, the statutory definition of sexual conduct was never given, although the jury was told to apply state law. Appellant requested that the R.C. 2907.01 definition be given. Failure to give the instruction constituted prejudicial error. If a requested instruction contains a correct and pertinent statement of the law, and it is appropriate to the facts of the case, the instruction must be included, at least in substance. *State* v. *Nelson* (1973), 36 Ohio St. 2d 79 [65 O.O.2d 222], paragraph one of the syllabus. When an incomplete instruction is given and the accused's substantial rights are adversely affected, reversible error has occurred. *State* v. *Huffman* (1936), 131 Ohio St. 27 [5 O.O. 325], paragraph six of the syllabus; R.C. 2945.83(D); Crim. R. 33(E)(4). The factual question of whether the sale of items involved sexual conduct as defined by the Ohio statute was not properly before the jury. At a minimum, the jury must be instructed as to the three-prong *Miller* test and the Ohio definition of sexual conduct as stated in R.C. 2907.01(A).

In conclusion, the items purchased by the arresting officer are not obscene *per se* as they fit neither the *Miller* guidelines nor the Ohio statute. Jury instructions which include both the *Miller* test and the Ohio statutory definition of sexual conduct are required. The factual question as to the sexual conduct, if any, involved in the sale must be placed before the jury by giving the proper instruction in the charge. Since the accused's substantial rights were adversely affected by the incomplete final charge to the jury, the judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

COOK, P.J., and DAHLING, J., concur.