The STATE of Ohio, Appellee,

v.

CAUDILL, Appellant.

[Cite as *State v. Caudill* (1991), 75 Ohio App.3d 322.]

Court of Appeals of Ohio,
Franklin County.

No. 90AP–902.

Decided July 30, 1991.

· *Ronald J. O'Brien,* City Attorney, *Marcee C. McCreary,* City Prosecutor, and *Thomas K. Lindsey,* for appellee.

*Eric P. Rotondo; Klein & Shafer, P.C.,* and *Lee J. Klein,* for appellant.

Bowman, Presiding Judge.

On December 8, 1989, an undercover Franklin County Sheriff's Deputy, Michael Spiert, entered the Disco Bookstore on Harrisburg Pike in Columbus and purchased a video movie entitled "Sensational Janine," which graphically depicts various sexual acts presented in the context of the experiences of an early twentieth century London prostitute. The purchase resulted in the arrest of the store clerk, appellant Roberta L. Caudill, on one count of pandering obscenity in violation of R.C. 2907.32(A)(2). Appellant was convicted after a jury trial and given a suspended jail sentence, with probation conditioned on performance of two hundred hours of community service, in addition to a fine and costs. Her sentence was stayed pending this appeal.

Appellant has appealed her conviction, setting forth the following assignments of error:

*"Assignment of Error I*

"The trial court erred in failing to grant appellant's motion to determine, pre-trial, the definition of 'prurient appeal' and 'patent offensiveness.'

*"Assignment of Error II*

"The trial court erred in excluding appellant's proffered public opinion poll and testimony relative thereto.

*"Assignment of Error III*

"The trial court erred (abused its discretion) by failing to exclude the highly prejudicial and non-probative testimony of Debra Seltzer.

*"Assignment of Error IV*

"The trial court erred in not defining contemporary community standards regarding patent offensiveness based upon a standard of what is generally 'tolerated' in the community as a whole."

R.C. 2907.32(A)(2) prohibits the sale or distribution of obscene material:

"(A) No person, with knowledge of the character of the material or performance involved, shall do any of the following:

"* * *

"(2) Promote or advertise for sale, delivery, or dissemination; sell, deliver, publicly disseminate, publicly display, exhibit, present, rent, or provide; or offer or agree to sell, deliver, publicly disseminate, publicly display, exhibit, present, rent, or provide, any obscene material[.]"

R.C. 2907.01(F) defines "obscene" as follows:

"(F) When considered as a whole, and judged with reference to ordinary adults or, if it is designed for sexual deviates or other specially susceptible

group, judged with reference to that group, any material or performance is 'obscene' if any of the following apply:

"(1) Its dominant appeal is to prurient interest;

"(2) Its dominant tendency is to arouse lust by displaying or depicting sexual activity, masturbation, sexual excitement, or nudity in a way that tends to represent human beings as mere objects of sexual appetite;

"(3) Its dominant tendency is to arouse lust by displaying or depicting bestiality or extreme or bizarre violence, cruelty, or brutality;

"(4) Its dominant tendency is to appeal to scatological interest by displaying or depicting human bodily functions of elimination in a way that inspires disgust or revulsion in persons with ordinary sensibilities, without serving any genuine scientific, educational, sociological, moral, or artistic purpose;

"(5) It contains a series of displays or descriptions of sexual activity, masturbation, sexual excitement, nudity, bestiality, extreme or bizarre violence, cruelty, or brutality, or human bodily functions of elimination, the cumulative effect of which is a dominant tendency to appeal to prurient or scatological interest, when the appeal to such an interest is primarily for its own sake or for commercial exploitation, rather than primarily for a genuine scientific, educational, sociological, moral, or artistic purpose."

Ohio's obscenity statutes have been held constitutional when read *in pari materia* with *Miller v. California* (1973), 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419, the United States Supreme Court case providing the test for determining obscenity. *State v. Burgun* (1978), 56 Ohio St.2d 354, 10 O.O.3d 485, 384 N.E.2d 255; *State v. Wolfe* (1987), 41 Ohio App.3d 119, 123–124, 534 N.E.2d 920, 924.

The *Miller* test subjects objectionable material to a three-part analysis designed to determine whether the material is obscene and, therefore, unprotected by the First Amendment to the United States Constitution. The test involves the following analysis:

" * * * (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest * * *; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. * * * " *Miller, supra,* 413 U.S. at 24, 93 S.Ct. at 2615, 37 L.Ed.2d at 431.

In *Pope v. Illinois* (1987), 481 U.S. 497, 107 S.Ct. 1918, 95 L.Ed.2d 439, the court further elucidated the applicable standard for determining whether the work as a whole lacks serious literary, artistic, political or scientific value by

finding this prong of the *Miller* test to be subject to a reasonable person analysis. *Pope, supra,* at 500–501, 107 S.Ct. at 1921, 95 L.Ed.2d at 445.

Appellant's first assignment of error asserts that the trial court erred in denying her motion to determine, pretrial, the meaning of the phrases "prurient appeal" and "patent offensiveness." Appellant did not request that the jury be instructed prior to trial but, rather, that she be provided with the definition to be used by the court in later instructing the jury. Appellant also requested the geographic boundaries of the "community." Appellant alleges the ruling served to deny her right to due process since the absence of notice as to the definitions of these terms interfered with her ability to adequately prepare and conduct her defense.

In overruling appellant's motion, the trial court stated:

"Defendant can show no legal basis or precedent for such pretrial relief. Further, it is well established (and noted by both counsel) that the legal test for obscenity in Ohio is found by incorporating the guidelines of *Miller v. California* (1973), 413 U.S. 15 [93 S.Ct. 2607, 37 L.Ed.2d 419] into the existing statutory scheme. *State v. Burgun* (1978), 56 Ohio St.2d 354 [10 O.O.3d 485, 384 N.E.2d 255]. Courts have successfully and properly applied this test without resorting to pretrial agreements on definitions. Accordingly, defendant's motion is overruled."

■ Crim.R. 12(B) provides that "[a]ny defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion. * * * " In addition, Crim.R. 1(B) requires the rules to be " * * * construed and applied to secure the fair, impartial, speedy, and sure administration of justice, simplicity in procedure, and the elimination of unjustifiable expense and delay." However, as the trial court's entry implied, the Criminal Rules do not specifically require pretrial instructions such as those sought by appellant. Thus, the trial court's decision on this motion was discretionary. Under an abuse of discretion standard, reversible error must be predicated upon an arbitrary, unreasonable or unconscionable trial court decision. *Urbana ex rel. Newlin v. Downing* (1989), 43 Ohio St.3d 109, 115, 539 N.E.2d 140, 146, certiorari denied (1989), 493 U.S. 934, 110 S.Ct. 325, 107 L.Ed.2d 315, citing *Steiner v. Custer* (1940), 137 Ohio St. 448, 19 O.O. 148, 31 N.E.2d 855.

■ Appellant urges that granting the motion was essential to protection of her due process rights, since a fair trial mandated notification of all the essential elements of the charge lodged against her. A crucial component of the requirement of due process is the disclosure by the state of the elements of the charge in order that the accused may prepare a defense. *E.g., State v.*

*Carter* (1979), 60 Ohio St.2d 34, 14 O.O.3d 199, 396 N.E.2d 757, certiorari denied (1980), 445 U.S. 953, 100 S.Ct. 1605, 63 L.Ed.2d 789. However, "community standards" is not an element of a charge of pandering obscenity but, rather, the standard by which the trier of fact determines whether the subject item is obscene.

We additionally find that appellant has failed to sufficiently demonstrate that she was prejudiced by the actions of the court. Appellant asserts that she would have prepared specific research materials relevant to the applicable community standards had she been aware before trial of the community to be considered by the jury. However, appellant fails to indicate what this research would have entailed and to what extent she was prohibited from nevertheless preparing it and at least proffering it at trial. Moreover, appellant did proffer a survey prepared by Dr. Joseph E. Scott, professor of sociology and criminal justice at The Ohio State University, which purported to indicate the standard for what would be considered obscene by residents of Franklin County.

Appellant also alleges the denial of her motion impeded her ability to cross-examine witnesses but again fails to set forth specific instances in which knowing the scope of the "community" or the definition of specific terms would have assisted in cross-examination.

Appellant additionally argues that the court should have defined pretrial the term "prurient appeal." Under *Miller* and the relevant Ohio statute, "prurient appeal" has been adequately defined to give appellant pretrial notice of its meaning. We thus reject this argument.

Neither are we persuaded by appellant's examples of other Ohio trial courts which have granted identical motions for pretrial definitions of the particular terms. The fact that other courts have granted such motions does not support appellant's contention that the failure to grant the motion here was an abuse of discretion and essential to protect her due process rights. Since we find the denial to have been neither arbitrary, unreasonable nor unconscionable, the court did not abuse its discretion and appellant's first assignment of error is overruled.

Appellant's second assignment of error asserts that the trial court improperly excluded a public opinion poll and related testimony going to the issue of the community standards in Franklin County regarding sexually explicit material. The trial court sustained the state's objection and excluded the evidence based upon its apparent finding that the survey and related testimony were based upon hearsay and not subject to any exceptions; however, the court did allow appellant to proffer the survey.

Appellant calls our attention to various cases from other jurisdictions which support her contention that the survey was admissible, provided a proper foundation was presented to establish the trustworthiness of the methods used and results obtained. Appellant argues her expert, Dr. Scott, had extensive experience in compiling polls on community standards and would have been able to lay such a foundation.

■ Contrary to the assertions of the state and the trial court, case law would support the argument that properly conducted opinion poll evidence is admissible to determine community standards in obscenity prosecutions. *United States v. Pryba* (E.D.Va.1988), 678 F.Supp. 1225 (*"Pryba I"*). The relevant issue in cases supporting the admissibility of such evidence is not whether the survey results are hearsay, but whether the results are trustworthy and relevant to the determination of the community standards. *Saliba v. State* (Ind.App.1985), 475 N.E.2d 1181.

■ Nevertheless, we are aware of no Ohio case representing the principle that where the results of public opinion polls are found to be trustworthy and relevant they *must* be admitted. Instead, the predominant view is that admission of expert testimony regarding community standards is not required, but within the discretion of the trial court. *State v. Williams* (1991), 75 Ohio App.3d 102, 598 N.E.2d 1250. See, also, *Newlin, supra,* citing *Pinkus v. United States* (1978), 436 U.S. 293, 98 S.Ct. 1808, 56 L.Ed.2d 293. See also, *Hamling v. United States* (1974), 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590; *State v. Fischer* (Jan. 18, 1990), Cuyahoga App. No. 56372, unreported, 1990 WL 3163.

*Williams, supra,* involved a pandering obscenity prosecution for the sale of a sexually explicit videotape. This court sustained a similar assignment of error on the basis that the trial court should have allowed proffer of the excluded public opinion poll, remanding the matter for a determination of whether the excluded survey was properly conducted and relevant to the question of guilt. Nevertheless, we said that, if the trial court found the survey to be "properly conducted and relevant, then that survey *may* be admissible." (Emphasis added.) *Williams, supra.*

By contrast, in the case currently before us, the trial court allowed appellant to proffer the public opinion poll but concluded it was not admissible. This was entirely within the trial court's discretion.

The allegedly obscene materials are " * * * ' * * * the best evidence of what they represent' * * * " and the issue of whether the materials are obscene under *Miller* and Ohio law may be decided by a jury without the assistance of expert testimony on the question of community standards. See

*Newlin, supra,* 43 Ohio St.3d at 113, 539 N.E.2d at 145, citing *Paris Adult Theatre I v. Slaton* (1973), 413 U.S. 49, 56, 93 S.Ct. 2628, 2634, 37 L.Ed.2d 446, 456, fn. 6. In *Newlin,* the Ohio Supreme Court stated, 43 Ohio St.3d at 112–113, 539 N.E.2d at 144:

" * * * In an obscenity trial, the trier of fact must determine, among other factors, whether the average person applying contemporary community standards would find that the work taken as a whole appeals to the prurient interest. * * * '[T]he term "average person" does not include any number of people, the majority, or a few, or some, but is a term connoting a composite or synthesis of the community.' * * * Qualitatively, the term average person does not mean the 'abnormal adult of noxious tendencies or the person of defective or subnormal mentality.' * * * For purposes of the *Miller* test, the average person is one with average sex instincts. * * *

"When the judge is the trier of fact in an obscenity case, the situation here, he must gauge the reaction of the community when and as if the 'average person' viewed the material. * * * Expert testimony on community standards is not required. * * * "

The court further stated in fn. 4 at 113, 539 N.E.2d at 144: "A jury may well be better equipped for the task of determining contemporary community standards than a judge, since a jury represents a cross section of a community and has a special aptitude for reflecting the view of the average person. There is a close analogy between the function of 'contemporary community standards' in obscenity cases and 'reasonableness' in other cases. 'A juror is entitled to draw on his own knowledge of the views of the average person in the community or vicinage from which he comes for making the required determination, just as he is entitled to draw on his knowledge of the propensities of a "reasonable" person in other areas of the law.' * * * "

In this case, we cannot say the trial court erred in failing to admit the survey evidence. Although the court apparently excluded the survey on the erroneous premise that the hearsay rule precluded its admission, the court did not abuse its discretion in excluding the survey, since other grounds for doing so were present.

It was within the trial court's discretion to exclude the survey evidence on the basis that the survey was not relevant to the issue presented to the jury: whether "Sensational Janine" was obscene. See *United States v. Pryba* (C.A.4, 1990), 900 F.2d 748 (*"Pryba II"*), affirming *Pryba I, supra.* The survey proffered here was a random telephone survey of approximately five hundred people and explored whether Franklin County residents were, in general, offended by sexually explicit materials. It did not specifically reference the videotape in question, nor did the survey describe the material

alleged to be obscene or ask questions based on the specific acts shown in the videotape. Inasmuch as the survey was conducted by telephone, it goes without saying that none of those individuals polled saw the videotape as part of the survey.

Appellant asserts, with some support, that so long as the survey would have been helpful to the jury, it should have been admitted. See *Saliba, supra,* 475 N.E.2d at 1187–1188. This view emanates from the theory that whatever shortcomings may be inherent in the survey, such as its failure to test reaction to the specific material alleged obscene or its inability to adequately convey the character of the material to those persons polled, the survey should be presented to the jury since such inadequacies go to the weight to be given the results and not to their admissibility. See, *e.g., Asaff v. State* (Tex.App.1990), 799 S.W.2d 329.

While opinion poll evidence may be relevant and probative, assuming a proper foundation has been laid, see *State ex rel. Pizza v. Strope* (1990), 54 Ohio St.3d 41, 560 N.E.2d 765; *Pryba I,* a trial court nevertheless has wide discretion in determining admissibility. See *State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343. Finding no abuse of discretion in the trial court's exclusion of the survey evidence under these facts, we overrule appellant's second assignment of error.

■ Appellant's third assignment of error charges that the trial court improperly admitted lay witness testimony by Debra Seltzer on the issues of whether "Sensational Janine" appealed to a prurient interest and was patently offensive. Appellant had asked that Seltzer's testimony be excluded on the basis that its prejudicial impact outweighed its probative value. This argument rested upon appellant's assertion that, as a rape crisis counselor and coordinator for the Ohio Coalition on Sexual Assault, Seltzer's occupation and consequent bias rendered her testimony highly prejudicial and unreliable.

At the same time, appellant urges that Seltzer's testimony had no probative value, since Seltzer admitted on cross-examination that she was unfamiliar with the *Miller* test for determining obscenity, that she did not know the legal definitions of "patently offensive" or "prurient interest," and that she had only once before seen a few minutes of a sexually explicit film.

Seltzer testified that she had seen "Sensational Janine" and had found it to be "unhealthy and degrading." She admitted her lack of knowledge of the legal test for obscenity, and that her exposure even to general-release, R-rated films portraying sexual relationships was limited. In addition, Seltzer admitted that she did not know the extent of availability of sexually explicit materials in Franklin County and that none of her acquaintances purchased or rented X-rated videos. She expressed her view that "Sensational Janine"

unrealistically portrayed women as totally accessible for sexual activity and that the lack of use of contraceptive devices in the film was unhealthy. The jury also was made aware of her employment experience. The record reflects that appellant's counsel extensively cross-examined Seltzer.

Lay witness testimony is generally admissible since:

" * * * Lay witnesses may testify about what they have observed or done with respect to items allegedly obscene, and they may state whether any challenged item taken as a whole appeals to the prurient interest using the objective test of contemporary community standards. They may also testify whether the items are patently offensive." *State v. Loshin* (1986), 34 Ohio App.3d 62, 67, 517 N.E.2d 229, 234.

· While we find little probative value in Seltzer's testimony, the admission or exclusion of such evidence is largely within the discretion of the trial court and appellant has demonstrated no prejudice.

We thus find no error in the admission of Seltzer's testimony. Appellant's third assignment of error is overruled.

Appellant finally asserts that the trial court erred in failing to give a jury instruction which defined "contemporary community standards" regarding patent offensiveness based upon a standard of what is generally tolerated as opposed to accepted as the trial court instructed the jury here. The contested portion of the trial court's instruction reads as follows:

"Patently offensive means that the material goes substantially beyond customary limits of candor in describing or representing sexual matters; that is, that these descriptions and representations must go so far beyond that which the average person in Franklin County accepts under the contemporary community standards."

Numerous cases have addressed the alleged distinction between what a community will "accept" and what it will "tolerate." *E.g., Fischer, supra; Asaff, supra; Pryba II, supra.* The words "accept" and "tolerate" have been used interchangeably. The Eighth District Court of Appeals addressed a similar issue in *Fischer, supra. Fischer* dealt with a pandering obscenity conviction for the operation of private booths for the purpose of viewing sexually explicit videotapes. On appeal, the defendant charged that the trial court should have instructed the jury that the proper community standard is what the community will "tolerate" rather than what the community will "accept." In overruling this assignment of error, the court relied upon *Sedelbauer v. State* (Ind.1981), 428 N.E.2d 206, certiorari denied (1982), 455 U.S. 1035, 102 S.Ct. 1739, 72 L.Ed.2d 153, in which the Indiana Supreme Court found the two words to be "virtually interchangeable." The Indiana court

determined that any perceived distinction in meaning between the two words was superficial, stemming from "unrelated language lifted from context" in United States Supreme Court opinions. *Sedelbauer, supra.* Any distinction between the two words is so insignificant as to fail to provide a sufficient basis for a finding of reversible error which must be predicated upon an incomplete or erroneous instruction resulting in substantial prejudice to the accused. See *State v. Brooks* (1984), 21 Ohio App.3d 47, 21 OBR 50, 486 N.E.2d 135; *State v. Nelson* (1973), 36 Ohio St.2d 79, 65 O.O.2d 222, 303 N.E.2d 865.

The choice of words used to describe the community's attitude toward sexually explicit material is merely one part of one prong of the complete test to be applied in an obscenity prosecution. Appellant was required to show how the trial court's use of one isolated phrase over another " * * * would have materially affected the deliberations of the jury. * * * " *Hamling, supra,* 418 U.S. at 108, 94 S.Ct. at 2903, 41 L.Ed.2d at 615. We therefore overrule appellant's fourth assignment of error.

For the foregoing reasons, appellant's assignments of error are not well taken and are overruled.

In an appeal from a conviction for pandering obscenity, this court is required to conduct an independent review of the record " * * * 'to be sure that the speech in question actually falls within the unprotected category and to confine the perimeters of any unprotected category within acceptably narrow limits in an effort to ensure that protected expression will not be inhibited.' * * * " *Newlin, supra,* 43 Ohio St.3d at 115, 539 N.E.2d at 146, citing *Bose Corp. v. Consumers Union of United States, Inc.* (1984), 466 U.S. 485, 505, 104 S.Ct. 1949, 1962, 80 L.Ed.2d 502, 519.

We have reviewed the record before us and conclude that the evidence is such that conviction was consistent with Ohio law and, therefore, the judgment of the trial court is affirmed.

*Judgment affirmed.*

JOHN C. YOUNG, J., concurs.

HARSHA, J., concurs in part and dissents in part.

HARSHA, J., of the Fourth Appellate District, sitting by assignment.

HARSHA, Judge, concurring in part and dissenting in part.

I agree that the obscene nature of material may be determined by the fact-finder based upon viewing the allegedly offensive material. Furthermore, the state need not present an expert witness or other evidence of community

standards to establish its case so as to withstand a Crim.R. 29(A) motion for acquittal. *Urbana ex rel. Newlin v. Downing* (1989), 43 Ohio St.3d 109, 113, 539 N.E.2d 140, 145. However, this acknowledgement as to the state's burden in proving its case in chief should not be interpreted to mean that an accused is not entitled to present public opinion and/or expert evidence on community standards in defending against a prima facie case. See *Saliba v. State* (Ind.App.1985), 475 N.E.2d 1181, 1185, wherein the court aptly stated:

"However, expert evidence on this issue may be highly relevant. The jurors are not instructed to evaluate obscenity based on their personal opinions but are charged with applying contemporary community standards. *Kaplan v. California*, 413 U.S. 115, 93 S.Ct. 2680, 37 L.Ed.2d 492 (1973). In the absence of expert testimony, the jury's determination of contemporary community standards runs the risk of incorporating the individual juror's 'necessarily limited, hit-or-miss subjective view' 'on the basis of his personal upbringing or restricted reflection or particular experience of life.' *Smith v. California*, 361 U.S. 147, 165, 80 S.Ct. 215, 225, 4 L.Ed.2d 205 [218] (1959) (Frankfurter, J., concurring). Consequently, the defendant in an obscenity prosecution is entitled to introduce relevant and appropriate expert testimony on the issue of contemporary community standards. *Kaplan v. California*, 413 U.S. 115, 93 S.Ct. 2680, 37 L.Ed.2d 492."

It is clear that the opinion poll was relevant under the definition found in Evid.R. 401. Evidence which tends to show the community's contemporary standards concerning obscenity would assist the jury in resolving factual issues involved in an obscenity prosecution. Given the unavoidable implications this case has on the accused's First, Sixth and Fourteenth Amendment rights, the trial court's discretion in admitting expert opinion and scientific experiments must be balanced against an accused's right to introduce appropriate evidence concerning a material element of the statutory definition of obscenity. See *Kaplan v. California* (1973), 413 U.S. 115, 121, 93 S.Ct. 2680, 2685, 37 L.Ed.2d 492, 498; *Carlock v. State* (Tex.Crim.App.1980), 609 S.W.2d 787. In my opinion, to do otherwise, results in an abuse of discretion.

I also acknowledge the fundamental principle that an appellate court reviews the propriety of decisions/judgments and not their underlying rationale. See *Joyce v. General Motors Corp.* (1990), 49 Ohio St.3d 93, 551 N.E.2d 172. While I agree that an appellate court should affirm a correct decision even where the trial court used improper reasoning to obtain its result, that principle has no application to the issue of whether or not the trial court abused its discretion in this case by excluding expert testimony.

As the majority opinion notes, the trial court excluded the public opinion poll on the improper basis that it was inadmissible hearsay. The majority then

holds that, because other grounds exist for exclusion, *i.e.*, relevancy and the discretion of the trial court in admitting expert evidence, that there was no error. As indicated above, the survey was clearly relevant to contemporary community standards of obscenity, notwithstanding the fact that it was not specific to acts shown in the video, etc. These concerns go to the weight of the evidence, not its admissibility. *Asaff, supra.*

As for exercising its discretion, I believe the trial court never, in fact, conducted such a balancing precisely because it erroneously determined that the "hearsay rule" precluded admissibility prior to attempting an analysis under Evid.R. 702. In other words, because the trial court previously misconceived the nature of the evidence, it never exercised its discretion to determine if the evidence would be helpful to the jury in resolving the issue of obscenity. Given that the trial court would have wide discretion in actually making that determination, it is a clear abuse of discretion not to make such an evaluation at all. See *Wolfe v. Wolfe* (Nov. 22, 1989), Pickaway App. No. 88–CA–18, unreported, 1989 WL 145455. Thus, the abuse of discretion standard used to review evidentiary questions cannot be utilized to affirm an erroneous *decision* in this instance.

Accordingly, I would reverse the judgment of conviction and remand for a new trial based upon appellant's second assignment of error. In all other respects, I concur in the judgment and opinion of the majority.