THE STATE OF OHIO, APPELLANT, *v.* WOLFE, APPELLEE. ■

THE STATE OF OHIO, APPELLANT, *v.* WOLFE, APPELLEE. ■

THE STATE OF OHIO, APPELLANT, *v.* WOLFE, APPELLEE. ■

THE STATE OF OHIO, APPELLANT, *v.* LONG, APPELLEE. ■

120

(Nos. 87AP-192 to 87AP-199—Decided September 22, 1987.)

*Ronald J. O'Brien,* city prosecutor, for appellant.

*Thomas M. Tyack,* for appellees.

WHITESIDE, J. In these consolidated cases, plaintiff, the state of Ohio, appeals from identical judgments of the Franklin County Municipal Court and raises the following assignments or error in each case:

"The trial court erred by granting the defendant-appellee's motion to dismiss the indictment."

On May 8, 1986, a police officer purchased a videotape entitled "Slave Piercing" from the defendants at the Zodiac Book Store. The videotape, which constitutes the subject of this action, is divided into four segments, each of which depicts sadomasochism, including sexual bondage, sexual discipline or flagellation, and each of which includes scenes of piercing of the genitals of males or females with a sharp object, often a needle, so that earrings or other devices or jewelry may be inserted in those genitals. The video is replete with scenes of spanking and whipping scantily clothed and unclothed men and women, manual stimulation of sexual organs of others, and physical subjugation, but no scenes of any type of sexual intercourse, except one showing an act of apparent cunnilingus involving two females.

The Franklin County Grand Jury returned a two-count indictment charging defendants with pandering obscenity under R.C. 2907.32, a misdemeanor with respect to the videotape of "Slave Piercing" sold to the police officer, one count charging exhibiting or advertising for sale and the other charging a sale of obscene material. The indictment was remanded to the Franklin County Municipal Court for trial. Each defendant entered a plea of not guilty and requested a jury trial. In addition, each defendant filed a motion to dismiss. The trial court, after an oral hearing and a review of the videotape in question,[1] granted defendants' motions, stating that:

"* * * [T]he activities depicted in the tape at issue do not fall within the definition of Sexual Conduct as set out in Section 2907.01 of the Revised Code of Ohio, as required in *Miller* v. *California,* 413 U.S. 15 (1973)."

---

[1] Although the matter was before the trial court upon a motion to dismiss prior to trial, the videotape was apparently presented and is included in the record on appeal. The videotape is pertinent to the second but not the first contention of defendants.

The state contends that R.C. 2907.01 must be considered in its entirety, and both the statute and applicable case law require the court to overrule the motion to dismiss. Defendants contend (1) that R.C. 2907.01(F) is unconstitutionally overbroad and vague, and (2) that, even if the statute is constitutional, the videotape does not present "sexual conduct" as defined by R.C. 2907.01(A). Defendants make no contention that the videotape in question constitutes protected "speech" or "press" under the First Amendment, but tacitly concede the videotape to be obscene under constitutional standards.

As held in *Roth* v. *United States* (1957), 354 U.S. 476, obscenity is not within the area of constitutionally protected speech or press either under the First Amendment, applicable to the federal government, or under the Due Process Clause of the Fourteenth Amendment, applicable to the states. Sixteen years later, after years of confusing decisions, the United States Supreme Court in *Miller* v. *California* (1973), 413 U.S. 15, at 24, finally set forth a tripartite test for judging whether material is obscene:

"* * * (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest * * *; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. * * *"

Included in that Supreme Court opinion were two "plain examples of what a statute *could* define for regulation under part (b)" (emphasis added) of the above-quoted test:

"(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

"(b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals." *Id.* at 25.

Additionally, the court commented, at 27, that under its holdings announced that day:

"* * * [N]o one will be subject to prosecution for the sale or exposure of obscene materials unless these materials depict or describe patently offensive 'hard core' sexual conduct specifically defined by the regulating state law, as written or construed. * * *"

The use of the term "hard core" sexual conduct does not limit the examples set forth in the *Miller* decision. Instead, such examples give meaning to the court's use of the words "hard core" several times in the opinion.

The Supreme Court in *Miller* expressly defined "sexual conduct" to include "sexual acts, normal or perverted, actual or simulated," *id.* at 25, and, thus, necessarily to include sadomasochistic materials. If there were any doubt, the Supreme Court further clarified *Miller, supra,* in *Ward* v. *Illinois* (1977), 431 U.S. 767, 773, when it emphasized that the specific examples given in *Miller, supra,* were merely examples and " 'were not intended to be exhaustive,' " citing *Hamling* v. *United States* (1974), 418 U.S. 87, 114. In *Ward,* the United States Supreme Court held that sadomasochistic materials may be proscribed by state law even though they are not expressly included within the examples of sexually explicit representations in *Miller;* that the Illinois obscenity statute is not on its face unconstitutionally vague as failing to give notice; and that, in any event, guidance had been given by prior decisions of the Illinois Supreme Court making it clear that the involved conduct did not conform to Illinois law. The *Ward* court, at 775-776, further held that the Illinois obscenity statute is not on its face unconstitutionally

overbroad and, even if it were, the Illinois Supreme Court expressly incorporated the *Miller* guideline as part of the law and thereby also adopted the *Miller* explanatory examples, which give substantive meaning to such guidelines by indicating some of the types of materials within the purview of the statute.

Quite recently, the United States Supreme Court in *Pope* v. *Illinois* (1987), 481 U.S. 497, reiterated that only parts (a) and (b) (appeals to prurient interest and patently offensive) of the *Miller* tripartite test should be determined with reference to contemporary community standards. The court held that the proper inquiry for part (c) (the existence of use for a proper value) of the test is whether a reasonable person would find such value in the material, taken as a whole. *Id.* at 500-501.

The Supreme Court's decisions, starting with *Miller, supra,* must be viewed against the background of earlier decisions in *Roth, supra,* and *Ginzburg* v. *United States* (1966), 383 U.S. 463. Chief Justice Warren in his concurring opinion in *Roth, supra,* does not hesitate to point out that, when it is a person, not a book or object, which is on trial, the conduct of the defendant is the central issue, and the "materials are * * * placed in context from which they draw color and character[,] [a] wholly different result might be reached in a different setting." *Roth, supra,* at 495. In *Ginzburg, supra,* defendant was convicted of violating a federal obscenity statute. Justice Brennan stated at 465-466:

"* * * We agree that the question of obscenity may include consideration of the setting in which the publications were presented as an aid to determining the question of obscenity. * * *."

Justice Brennan further stated at 475-476:

"* * * Where an exploitation of interests in titillation by pornography is shown with respect to material lending itself to such exploitation through pervasive treatment or description of sexual matters, such evidence may support the determination that the material is obscene even though in other contexts the material would escape such condemnation."

The Ohio legislature in R.C. 2907.32 prohibits the pandering of obscenity and provides, in part, as follows:

"(A) No person, with knowledge of the character of the material or performance involved, shall do any of the following:

"(1) Create, reproduce, or publish any obscene material, when the offender knows that such material is to be used for commercial exploitation or will be publicly disseminated or displayed, or when he is reckless in that regard;

"(2) Exhibit or advertise for sale or dissemination, or sell or publicly disseminate or display any obscene material;

"(3) Create, direct, or produce an obscene performance, when the offender knows that it is to be used for commercial exploitation or will be publicly presented, or when he is reckless in that regard;

"(4) Advertise an obscene performance for presentation, or present or participate in presenting an obscene performance, when such performance is presented publicly, or when admission is charged;

"(5) Possess or control any obscene material with purpose to violate division (A)(2) or (4) of this section."

The Committee Comment to R.C. 2907.32 (although made prior to *Miller*) gives some insight as to the rationale of the section, and reads, in pertinent part, as follows:

"This section retains a basic obscenity offense designed in part to

take advantage of the rule in *Ginzburg* v. *United States,* 383 U.S. 463 * * * (1966), which holds that when highly erotic material cannot be termed obscene on its face, the fact that its salacious qualities were deliberately exploited is evidence that it is obscene.

"This section in essence prohibits commercial exploitation or public dissemination of obscene matter, and proof of either rests primarily on objective evidence of specific facts. The same evidence, moreover, can be determinative of the question of obscenity in close cases, through application of the *Ginzburg* rule, thus alleviating some of the practical difficulties in determining whether matter which borders on the obscene is indeed obscene."

The phrase "obscene material" as used in R.C. 2907.32 is defined by R.C. 2907.01(F) as follows:

"(F) When considered as a whole, and judged with reference to ordinary adults or, if it is designed for sexual deviates or other specially susceptible group, judged with reference to that group, any material or performance is 'obscene' if any of the following apply:

"(1) Its dominant appeal is to prurient interest;

"(2) Its dominant tendency is to arouse lust by displaying or depicting sexual activity, masturbation, sexual excitement, or nudity in a way that tends to represent human beings as mere objects of sexual appetite;

"(3) Its dominant tendency is to arouse lust by displaying or depicting bestiality or extreme or bizarre violence, cruelty, or brutality;

"(4) Its dominant tendency is to appeal to scatological interest by displaying or depicting human bodily functions of elimination in a way that inspires disgust or revulsion in persons with ordinary sensibilities, without serving any genuine scientific, educational, sociological, moral, or artistic purpose;

"(5) It contains a series of displays or descriptions of sexual activity, masturbation, sexual excitement, nudity, bestiality, extreme or bizarre violence, cruelty, or brutality, or human bodily functions of elimination, the cumulative effect of which is a dominant tendency to appeal to prurient or scatological interest, when the appeal to such an interest is primarily for its own sake or for commercial exploitation, rather than primarily for a genuine scientific, educational, sociological, moral, or artistic purpose."

R.C. 2907.01(C) defines "sexual activity" as including both sexual conduct and sexual contact which in turn are defined by R.C. 2907.01(A) and (B) as follows:

"(A) 'Sexual conduct' means vaginal intercourse between a male and female, and anal intercourse, fellatio, and cunnilingus between persons regardless of sex. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

"(B) 'Sexual contact' means any touching of an erogenous zone of another, including without limitation, the thigh, genitals, buttocks, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."

The Committee Comment to R.C. 2907.01 points out that the definition of obscenity is designed to meet the requirements of *Roth, supra,* and the cases following in its wake. "* * * It spells out what is 'obscene' in much greater detail than existing case law, in order to increase the utility of the definition for law enforcement purposes."

In the wake of the United States Supreme Court decision in *Miller, supra,* and the enactment of R.C. Chapter 2907, the Ohio Supreme Court in ruling on the constitutionality of the Ohio statutory definition of obscenity held in the first paragraph of the syllabus in *State* v. *Burgun* (1978), 56

Ohio St. 2d 354, 10 O.O. 3d 485, 384 N.E. 2d 255, that:

"R.C. 2907.01(F), which sets forth the definition of 'obscenity,' is neither unconstitutionally overbroad nor void for vagueness when it is authoritatively construed to incorporate the guidelines prescribed in *Miller* v. *California,* 413 U.S. 15."

The court reviewed previous cases which construed the predecessor to R.C. 2907.01(F) and found that, although the tripartite *Miller* test was not visibly, literally, or facially incorporated in the definition of obscenity, the "wording of the *entire* statute, when construed *in pari materia* with the *Miller* decision, adequately protected the First Amendment values applicable to the states through the Fourteenth Amendment.* * *" (Emphasis *sic.*) See *Burgun, supra,* at 360, 10 O.O. 3d at 489, 384 N.E. 2d at 260.

In the *Burgun* opinion, at 360-361, 10 O.O. 3d at 489, 384 N.E. 2d at 260-261, the court noted that the Illinois statute held constitutional in *Ward, supra,* contained a far more generalized description of obscenity than that found in R.C. 2907.01(F), but had been construed by the Illinois court to incorporate the *Miller* guidelines.

In 1982, the United States Court of Appeals, Sixth Circuit, in *Turoso* v. *Cleveland Municipal Court* (1982), 674 F. 2d 486, 492, commented upon the Ohio obscenity statute as follows:

"* * * In addition to meeting one or more of the five requirements of section 2907.01(F), material must also depict or describe sexual *conduct, contact,* or *activity* within the meaning of section 2907.01(A)-(C).

"Alternatively, the material at issue must both satisfy one or more of the definitions of section (F) and comport with one of the *Miller* examples in order to satisfy *Miller.* * * *" (Emphasis added.)

We are not bound by the decision of the United States Court of Appeals for the Sixth Circuit in *Turoso, supra,*[2] but we agree with much (but not all) of the reasoning of that court in our own review of R.C. 2907.01. We are, however, bound by the decision of the Ohio Supreme Court in *Burgun, supra,* with which we are in complete agreement. Accordingly, not only is the *Miller* test incorporated into R.C. 2907.01(F), but such statute is neither overbroad nor vague in the constitutional sense. R.C. 2907.01, when read in its entirety and *in pari materia* with *Miller,* is not unconstitutional. As the Ohio Supreme Court stated in *Burgun:*

"The United States Supreme Court did not intend for every state legislature to rewrite its obscenity statutes as a result of the *Miller* decision. As indicated, an 'authoritative construction' of applicable state law limiting the regulation of obscenity by the guidelines in that decision would be constitutionally sufficient." *Id.* at 358, 10 O.O. 3d at 488, 384 N.E. 2d at 259.

In addition to being constitutional,

---

[2] The federal district court decision, *Sovereign News Co.* v. *Falke* (N.D. Ohio 1977), 448 F. Supp. 306, remanded *sub nom. Sovereign News Co.* v. *Corrigan* (C.A. 6, 1979), 610 F. 2d 428, relied upon by defendants, not only is not binding but is not even persuasive authority since it is rationally flawed and conflicts with both *Burgun* and *Turoso,* which were determined several years later. Clearly, R.C. 2907.01(F)(5) meets the constitutional test of *Miller* even without incorporation, but incorporation removes any proper argument of unconstitutionality with respect to the remainder of R.C. 2907.01(F), as well as with respect to R.C. 2907.01(F)(5). *Miller* expressly held that a statute could constitutionally proscribe lewd exhibition of the genitals as well as other conduct as constituting sexual conduct within the contemplation of the *Miller* test.

R.C. 2907.01(F) is applicable to the videotape in question. We find that this video, which depicts, *inter alia,* the piercing of male and female genitals in the context of bondage, sexual discipline, and sadomasochism is "obscene" as defined by R.C. 2907.01(C), R.C. 2907.01(F), and *Miller, supra,* construed *in pari materia.*

The Ohio legislature has chosen to define conduct which is sexual as "sexual conduct" (R.C. 2907.01[A]), "sexual contact" (R.C. 2907.01[B]), or "sexual activity" (R.C. 2907.01[C]). The use of the words "sexual conduct" in R.C. 2907.01(A) cannot limit the meaning of "sexual conduct" as used in *Miller.* The United States Supreme Court in *Miller* did not intend to delegate to a state legislature the authority to determine the meaning of "sexual conduct" as used by that court through a state statute defining "sexual conduct" as used in such specific statute.

The words "sexual conduct" as used in *Miller* are not defined or limited by R.C. 2907.01(A). Rather, "sexual conduct" as used in *Miller* is much broader than the definition of R.C. 2907.01(A) and includes most, if not all, of the conduct defined as "sexual activity" by R.C. 2907.01(C).[3] *Miller* defined in terms of "sexual conduct" that which may be proscribed by state law, but state statute cannot limit the meaning or extent of *Miller* even though it may limit the scope and application of the statute itself. The

*Miller* court further specifically held at 25-26, that:

"Sex and nudity may not be exploited without limit by films or pictures exhibited or sold in places of public accommodation any more than live sex and nudity can be exhibited or sold without limit in such public places. At a minimum, prurient, patently offensive depiction or description of sexual conduct must have serious literary, artistic, political, or scientific value to merit First Amendment protection. * * *"

Accordingly, in order for a work to be obscene, it must satisfy the definition of R.C. 2907.01(F) as well as comport with the *Miller* definition of what can be proscribed as obscene.

R.C. 2907.01(F)(2) defines "obscene" as material which has a dominant tendency to arouse lust by depicting sexual activity in a way that tends to represent humans as mere objects of sexual appetite. "Sexual activity" under R.C. 2907.01(C) can mean touching an erogenous zone of another for the purpose of sexually arousing or gratifying either person.[4] The foregoing is "sexual conduct" specifically defined by the applicable Ohio state law within the contemplation of *Miller.* The video in this case falls within such definition.

As per *Miller,* the trier of fact must decide whether the average person applying contemporary community standards would find that the work taken as a whole appeals to the pruri-

---

[3] By *Burgun, supra,* the meaning of the definition of "sexual activity" as defined by R.C. 2907.01(C) has been limited (if that be necessary) to "sexual conduct" within the contemplation of those words as used in *Miller,* but R.C. 2907.01(A) does not change the *Miller* definition. Likewise, by *Burgun,* R.C. 2907.01(B) has been limited by the *Miller* definition of "sexual conduct."

[4] By their very nature, acts of sadomasochism, including sexual bondage or sexual discipline, fall within the definition of sexual contact in R.C. 2907.01(B) since such acts necessarily involve the touching of an erogenous zone for the purpose of sexual gratification.

ent interest, whether the work depicts or describes in a patently offensive way the sexual conduct which is defined by the applicable state law and whether the work taken as a whole lacks serious literary, artistic, political, or scientific value. If the trier of fact finds that the average person would find that this work appeals to prurient interest,[5] that it is patently offensive, and that it lacks serious literary, artistic, political, or scientific value, then it can be determined that this video in question is obscene.

Accordingly, this court finds that the trial court erred by granting defendants' motions to dismiss, and the state's assignment of error is well-taken.

As indicated in both *Miller* and *Ward,* and specifically set forth in R.C. 2907.01(F), the prurient interest with respect to acts of sexual perversion is not an appeal to the prurient interest of the average person but, rather, an appeal to the prurient interest of the small sub-group of sexual deviants or perverts who derive sexual pleasure from such sexually perverted or deviant acts. The videotape in question is obviously designed to appeal to the prurient interest of a perverted group of persons who receive sexual stimulation or gratification from observing this type of sexually perverted conduct. Such type of obscenity falls within the proscription of R.C. 2907.32 coupled with the definition of R.C. 2907.01(A) and the incorporated *Miller* standards.

For the foregoing reasons, the state's assignment of error is sustained, the judgments of the Franklin County Municipal Court are reversed, and these causes are remanded to that court for further proceedings in accordance with law consistent with this opinion.

*Judgments reversed*
*and causes remanded.*

BOWMAN and YOUNG, JJ., concur.

---

[5] The prurient interest need not be that of the average person.