Lorrie Rhonemus, sole proprietor of defendant-appellant, Video Express, appeals a Fayette County Court of Common Pleas nuisance abatement order that closed her videotape rental store for one year. Rhonemus sets forth several difficult statutory and constitutional issues within seven assignments of error.
Rhonemus operated Video Express in Washington Court House, Fayette County, Ohio. The video store carried about twelve hundred general release videotapes in a main room. Rhonemus also offered about three hundred forty-five "adult-oriented" videotapes in a smaller, separate room with access restricted to those over age twenty-one. In June 1994, the Fayette County Prosecutor, Steven H. Eckstein, sent Rhonemus a letter directing her attention to Ohio's pandering obscenity statute, R.C.2907.32. The prosecutor informed Rhonemus that certain videotapes she offered appeared to be obscene. According to the prosecutor, those tapes "depicted numerous acts of vaginal and/or anal intercourse, fellatio, and cunnilingus."
On March 2, 1995, an investigator with the prosecutor's office rented two videotapes from Video Express, copied those tapes, and returned the originals to the store. On March 3, the prosecutor filed a complaint under R.C. 2907.37(A) to enjoin Rhonemus from renting the two videotapes. The trial court granted the state's request for an ex parte temporary restraining order on March 6. On March 17, the prosecutor amended his complaint to allege a civil nuisance under R.C. 2907.37(B) and R.C. Chapter 3767. The amended complaint alleged that Video Express should be abated as a nuisance for repeatedly renting obscene videotapes to the public in violation of R.C. 2907.32. At the prosecutor's request, the trial court dissolved the temporary restraining order on March 24.
Rhonemus filed an answer and counterclaim on April 7, 1995. The counterclaim alleged that the prosecutor's June 1994 letter was an unconstitutional attempt to impose a prior restraint on her First Amendment rights in violation of 42 U.S.C. § 1983. Rhonemus also sought a declaratory judgment that the two videotapes were not obscene. The trial court dismissed Rhonemus' counterclaim in both regards. The trial court subsequently overruled Rhonemus' motion to suppress the copied videotapes as evidence. The trial court also denied her request to seat an advisory jury.
After a trial before the court on April 2, 1996, the trial judge found that the two videotapes were obscene, that Rhonemus knew they were obscene, and that their rental constituted a nuisance. The trial court ordered the entire video store closed for one year and ordered certain property associated with the rental of the videotapes sold at auction. Rhonemus asked for a release from the closure order, but the trial court denied that request because Rhonemus leased the premises.
On appeal, Rhonemus sets forth seven assignments of error. Rhonemus' first three assignments of error raise several threshold issues. This court will consider Rhonemus' second assignment of error first.
Rhonemus complains under her second assignment of error that the trial court erred in not suppressing the copied videotapes as evidence. This court disagrees.
"Absent some action taken by government agents that can properly be classified as a `search' or `seizure,' the Fourth Amendment rules designed to safeguard First Amendment freedoms do not apply." Maryland v. Macon (1985), 472 U.S. 463, 469,105 S.Ct. 2778, 2782 (examination and purchase of materials in adult bookstore did not constitute a search or seizure). There was no illegal search here since Rhonemus had no reasonable expectation of privacy over videotapes that she rented to the public. See id. The critical issue is whether the state's act of copying the videotapes amounted to an unconstitutional seizure. See State v. Pink Pyramid (Oct. 18, 1995), Hamilton App. No. C-940930, unreported at 4.
A seizure occurs when "there is some meaningful interference with an individual's possessory interests in the property seized." Macon at 469, 105 S.Ct. at 2782. This court concludes there was no seizure in this case. There is no indication that the state violated any express terms of the rental. Compare Pink Pyramid (where police rented a videotape, held the tape longer than the stated rental period and paid applicable late fees, there was no seizure because there was no meaningful interference with the owner's possessory interest in the tape). There is also no indication that Rhonemus holds a copyright over the contents of the videotapes. Rhonemus has offered no other compelling explanation of how the state compromised her possessory interest in the videotapes. Under these circumstances, the trial court did not err in refusing to suppress the copied videotapes as evidence. Rhonemus' second assignment of error is overruled.
Rhonemus complains under her first assignment of error that the trial court erred in dismissing her counterclaims. There are two distinct issues here: whether the trial court erred in dismissing Rhonemus' 42 U.S.C. § 1983 claim against Prosecutor Eckstein, and whether the trial court erred in dismissing her motion for a declaratory judgment.
Rhonemus first argues that the trial court should have proceeded with her motion for a declaratory judgment. The trial court did not abuse its discretion in dismissing that motion, although the reasoning the trial court employed was faulty.
The trial court cited R.C. 2907.36(C) in denying Rhonemus' request for a declaratory judgment. That statute does not apply here, however, because neither party filed a motion for a declaratory judgment under R.C. 2907.36. Even if the trial court properly considered R.C. 2907.36, that statute expressly provides that it places no limitations "on the persons otherwise entitled to bring an action for a declaratory judgment pursuant to sections 2721.01 to 2721.15 * * *."
Although R.C. 2907.36(C) does not support the trial court's position, the trial court did not abuse its discretion in dismissing the motion for a declaratory judgment. The Ohio Supreme Court has said that actions for declaratory judgment are inappropriate where "special statutory proceedings" would be bypassed. State ex rel. Albright v. Delaware Cty. Ct. of Com. Pleas (1991), 60 Ohio St.3d 40, 42. Prosecutor Eckstein filed both his original and amended complaints before Rhonemus sought a declaratory judgment; Rhonemus was trying to bypass an existing action. In light of the pending proceedings, the trial court did not abuse its discretion in dismissing the declaratory judgment motion.
The trial court also dismissed Rhonemus' Section 1983 complaint against Prosecutor Eckstein. That complaint was based upon the prosecutor's June 1994 letter to Rhonemus. "A cause of action under Section 1983 must allege that a person, acting under color of law, deprived the plaintiff of a constitutionally guaranteed federal right." Conley v. Shearer (1992), 64 Ohio St.3d 284,294. An action will not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts to support his claim. See Conley v. Gibson (1957),355 U.S. 41, 45, 78 S.Ct. 99, 102.
The trial court dismissed the Section 1983 claim on procedural due process grounds, stating that "defendant has not been deprived of any right to be heard." The trial court, however, misunderstood or ignored Rhonemus' claim that the prosecutor's letter was part of an effort to impose a prior restraint on constitutionally protected expression. A Section 1983 claim based upon deprivation of the First Amendment guarantee of free speech is always available regardless of supplemental state remedies. Cooperman v. University Surgical Assoc. (1987), 32 Ohio St.3d 191,199.
Rhonemus set forth a viable claim under Section 1983, and the state all but concedes that the trial court erred in dismissing that complaint. The state argues, however, that any error was harmless. This court cannot agree. The prosecutor's June 1994 letter did not refer to any specific title and only offered guidance that a grand jury had found videotapes obscene that "depicted numerous acts of vaginal and/or anal intercourse, fellatio, and cunnilingus." The state argues that this description fits within the definition of obscenity set forth in R.C. 2907.01(F). That statutory definition, however, must be "authoritatively construed" to incorporate the guidelines prescribed in Miller v. California (1973), 413 U.S. 15,93 S.Ct. 2607. State v. Burgun (1978), 56 Ohio St.2d 354, paragraph one of the syllabus. The prosecutor's description of obscene material could include expressive material that is not obscene under the guidelines established in Miller. Therefore, the letter could be construed as an attempt to impose a prior restraint on Rhonemus' constitutional right to free speech. The trial court's decision dismissing Rhonemus' Section 1983 complaint was not harmless error.
To summarize this assignment of error, the trial court did not abuse its discretion in denying Rhonemus' motion for a declaratory judgment. The trial court did, however, err in dismissing her Section 1983 complaint against Prosecutor Eckstein. Rhonemus' Section 1983 action must be reinstated. Rhonemus' first assignment of error is sustained in part and overruled in part.
Rhonemus complains in her third assignment of error that the trial court erred in issuing an ex parte temporary restraining order on March 6, 1995. She argues the trial court did not follow Civ.R. 65(A) before issuing the ex parte order. Rhonemus' argument is well-taken, but there is no reversible error.
A trial court can issue an ex parte temporary restraining order "only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss or damage will result * * *, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give notice and the reasons supporting his claim that notice should not be required." Civ.R. 65(A). The requirements of Civ.R. 65(A) are mandatory, not merely directory. North Electric Co. v. United Steelworkers of America (1971), 28 Ohio App.2d 253, 259; Octa v. Interstate Adult Arcade (Oct. 17, 1994), Fayette App. No. CA94-04-002, unreported at 11-12. Without a showing of prejudice, however, noncompliance with the mandatory requirements of Civ.R. 65(A) may constitute harmless error. North Electric at 259-60.
The prosecutor and the trial court ignored the requirements of Civ.R. 65(A). The prosecutor set forth no specific facts to demonstrate that "immediate and irreparable injury, loss or damage [would] result to the applicant before the adverse party or his attorney [could] be heard in opposition."[1] The prosecutor also did not "certif[y] to the court in writing the efforts, if any, made to give notice and the reasons supporting his claim that notice should not be required." See Civ.R. 65(A). The trial court did not "define the injury [or] state why it is irreparable and why the order was granted without notice * * *" as required by Civ.R. 65. In its March 6 judgment entry, the trial court concluded simply "that the issuance of such Temporary Restraining Order is permissible ex parte [sic] under R.C.2727.01." (Emphasis added.) R.C. 2727.01 was repealed in 1971. Civ.R. 65 is controlling.
The trial court ignored the requirements of Civ.R. 65 in issuing its ex parte temporary restraining order. Rhonemus' third assignment of error is sustained. The trial court, however, dissolved the ex parte temporary restraining order on March 24, 1995. Rhonemus has not come forward with any indication that she was prejudiced by the trial court's imposition of the ex parte order. The trial court's issuance of the improper order provides no basis to reverse the trial court's subsequent orders.
The remaining four assignments of error are related to the trial court's nuisance abatement order against Video Express. Rhonemus complains under her fourth assignment of error that the trial court's one year closing order was unconstitutional. She argues under her fifth assignment of error that the court improperly found "repeated violations" of the criminal prohibition against pandering obscenity. In her sixth assignment of error, Rhonemus contends that the trial court abused its discretion in refusing to empanel an advisory jury. Finally, Rhonemus argues that the trial court erred in concluding that the videotapes at issue were obscene. This court will address Rhonemus's fourth assignment of error last.
Rhonemus argues in her fifth assignment of error that the trial court erred in finding that she had repeatedly violated Ohio's pandering statute. The crux of her argument is that the state cannot establish "repeated violations" of the prohibition against pandering obscenity in a civil proceeding without providing the same procedural safeguards available to a criminal defendant charged with violating the underlying pandering statute. Rhonemus specifically complains that she was entitled to a jury determination on the issue of obscenity.
R.C. 3767.01(C) provides in part that a nuisance is "that which is defined and declared by statutes to be such * * *." R.C.2907.37(B) provides that premises used for "repeated violations" of the criminal obscenity statutes, R.C. 2907.31 and R.C.2907.32, are a nuisance subject to abatement pursuant to R.C. Chapter 3767. R.C. 2907.37(B) is silent on whether repeated violations of the pandering statute must be determined with the same procedural safeguards available to a criminal defendant, i.e., a right to a jury trial and to a greater burden of proof for the state.
There is no federal constitutional mandate requiring a jury trial in state civil proceedings. See Alexander v. Virginia (1973), 413 U.S. 836, 93 S.Ct. 2803, 2804. In Ohio, it is wellsettled that there is no right to a jury trial in a nuisance abatement action. State ex rel. Miller v. Anthony (1995), 72 Ohio St.3d 132, paragraph one of the syllabus. Importantly, in Anthony the supreme court held that when the state offers clear and convincing evidence that felony violations of R.C. Chapter 2925 chronically occur on a parcel of property, that evidence is sufficient to establish a nuisance. Id. at paragraph three of the syllabus. See, also, State v. Warjack (Mar. 11, 1996), Madison App. No. CA95-08-023, unreported.
The reasoning and result in Anthony suggest that there is no right to a jury trial in a nuisance abatement action even where the underlying nuisance is based upon a criminal statute. In light of Anthony, this court concludes that the state may attempt to establish "repeated violations" of R.C. 2907.32 during the civil nuisance abatement action. Rhonemus' fifth assignment of error is overruled.
Rhonemus complains under her sixth assignment that the trial court erred in denying her request for an advisory jury. Civ.R. 39(C) provides that "[i]n all actions not triable of right by a jury (1) the court * * * may try any issue with an advisory jury." (Emphasis added.) The civil rule expressly provides that the decision to seat an advisory jury is discretionary, and this court will not reverse a trial court's decision not to seat such a jury absent an abuse of discretion.
Although the Ohio Supreme Court has suggested that juries may be better suited than judges to make an obscenity determination, Urbana ex rel. Newlin v. Downing (1989), 43 Ohio St.3d 109, 113
at fn. 4,[2] this court is not convinced that the trial court abused its discretion in not seating an advisory jury. Rhonemus' sixth assignment of error is overruled.
Rhonemus' complains under her seventh assignment of error that the trial court erred in concluding that the two videotapes were obscene. This court is obligated to make an independent judgment on whether the material involved is constitutionally protected. Miller, 413 U.S. at 25, 93 S.Ct. at 2615; Jacobellis v. Ohio (1964), 378 U.S. 184, 190, 84 S.Ct. 1676, 1679 (in obscenity cases, as in all other First Amendment cases, the court cannot avoid making an independent constitutional judgment on the facts of the case).
R.C. 2907.01(F) defines obscenity in Ohio. That statutory definition must be construed together with the guidelines established in Miller. Burgun, 56 Ohio St.2d at paragraph one of the syllabus. Miller described the permissible scope of state regulation of obscenity as follows:
 State statutes designed to regulate obscene materials must be carefully limited. As a result, we now confine the permissible scope of such regulation to works which depict or describe sexual conduct. That conduct must be specifically defined by the applicable state law, as written or authoritatively construed. A state offense must also be limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value.
Id. at 23-24, 93 S.Ct. at 2614-15 (Citation and footnote omitted).
"When the judge is the trier of fact in an obscenity case, the situation here, he must gauge the reaction of the community when and as if the `average person' viewed the material." Urbana ex rel. Newlin, 43 Ohio St.3d at 113. This court has independently reviewed the videotapes. Both videotapes depict sexual conduct specifically defined in R.C. 2907.01(A). This court is also satisfied that an "average person" would conclude that the material meets the three guidelines set forth in Miller. The trial court did not err in finding the videotapes obscene. Rhonemus' seventh assignment of error is overruled.
In her fourth assignment of error, Rhonemus complains the trial court's order closing Video Express was an unconstitutional prior restraint in violation of the First Amendment. Although this court does not agree with all of the arguments Rhonemus makes in this assignment of error, this court is convinced that the trial court abused its discretion in issuing an overly broad abatement order.
Application of the one year closing order in this case raises serious constitutional issues. The First Amendment protects motion pictures as fully as other mediums of expression. Joseph Burstyn, Inc. v. Wilson (1952), 343 U.S. 495, 72 S.Ct. 777 ("The importance of motion pictures as an organ of public opinion is not lessened by the fact that they are designed to entertain as well as to inform"). Obscenity is not protected expression. Roth v. United States (1957), 354 U.S. 476, 77 S.Ct. 1304. However, since obscenity is often separated from protected expression only by a "dim and uncertain line," regulation must be accomplished through "procedures that will ensure against the curtailment of constitutionally protected expression." Bantam Books v. Sullivan (1963), 372 U.S. 58, 66, 78 S.Ct. 631, 637 (any system of prior restraints of expression bears a heavy presumption against its constitutional validity).
The regulation of obscenity through a civil abatement action may impose a greater threat to free speech than subsequent punishment for the violation of criminal obscenity laws. The Supreme Court has said that "the regulation of a communicative activity * * * must adhere to more narrowly drawn procedures than is necessary for the abatement of an ordinary nuisance, and * * * the burden of supporting an injunction * * * is even heavier than the burden of justifying the imposition of a criminal sanction for a past communication." Universal Amusement Co. v. Vance (1980), 445 U.S. 308, 316, 100 S.Ct. 1156, 1161.
Ohio's nuisance abatement scheme provides for the one year closure of any "place" where a nuisance is found to exist. The Ohio Supreme Court has held that R.C. Chapter 3767 provides a constitutionally permissible method of controlling the exhibition of obscene films.[3] State ex rel. Ewing v. "Without a Stitch" (1974), 37 Ohio St.2d 95, paragraph three of the syllabus, dismissed sub nom., Art Theater Guild, Inc. v. Ewing (1975),421 U.S. 923, 95 S.Ct. 1649. The supreme court emphasized, however, that the abatement provisions must be carefully applied. The release provisions found in R.C. 3767.04 were critical to the supreme court's conclusion that Ohio's nuisance abatement scheme was constitutional. The court emphasized that "[t]he release provisions do not, as appellants contend, require the owner to show that no film to be exhibited during the one-year period will be obscene. Such a requirement would not only be impossible, as a practical matter, but also would be an unconstitutional prior restraint on an activity generally protected by the First Amendment." Id. at 105 (emphasis added). The United States Supreme Court has also emphasized the importance of the release provisions to the constitutional application of Ohio's nuisance abatement provisions. Huffman v. Pursue, Ltd. (1975),420 U.S. 592, 612, 95 S.Ct. 1200, 1212, fn. 23.
"Without a Stitch" involved the exhibition of an obscene film, not the distribution of obscene material. The Ohio First District Court of Appeals, however, has considered the nuisance abatement scheme in this context. State ex rel. Leis v. William S. Barton Co. (1975), 45 Ohio App.2d 249. In Barton Co., the Hamilton County prosecutor filed a civil action against a bookstore to abate a nuisance involving the sale of allegedly obscene material. After a trial, the trial court found the material obscene and closed the store for one year. The trial court subsequently refused to release the closing order without specific guarantees that no further nuisance would occur on the property. On appeal, the appellate court explained that
 where a property owner undertakes or proffers the undertaking of three actions — 1) payment of the tax and costs of the abatement action, 2) the filing of a bond in the full value of the property, and 3) a demonstration that he will not exhibit the particular items declared to be obscene — the trial court must release the closure order.
Id. at 254 (emphasis in original). The appellate court concluded that any requirement that an owner refrain from exhibiting materials that had not been judicially determined obscene would constitute an unconstitutional prior restraint. Id.
The decisions in "Without a Stitch" and Barton Co. establish a civil abatement action as a proper vehicle to curb dissemination of obscene material. Both decisions, however, also emphasize the necessity to narrowly interpret the nuisance abatement provisions where presumptively protected expressive material is involved. Compare State ex rel. Rear Door Bookstore v. Tenth Dist. Court of Appeals (1992), 63 Ohio St.3d 354, 362 (sexual activity resulting in sanctions did not involve First Amendment freedoms of speech or activity).
In light of the difficult constitutional issues here, this court must carefully consider the scope of the trial court's closing order. The first step is to review the trial court's discretion over that order. R.C. 3767.06 provides in part:
 If the existence of a nuisance is admitted or established * * * an order of abatement shall be included in the judgment entry * * *. The order shall direct the removal from the place where the nuisance is found to exist of all personal property and contents used in conducting or maintaining the nuisance * * * and [if a closing order has not previously been issued] shall include an order directing the effectual closing of the place where the nuisance is found to exist against its use for any purpose and keeping it closed for a period of one year unless sooner released.
(Emphasis added.) R.C. 3767.01 defines "place" as "any building, erection, or place or any separate part or portion thereof or the ground itself[.]" (Emphasis added.)
The broad definition of "place" in R.C. Chapter 3767 provides the trial court with discretion to tailor an abatement order to the specific nuisance. Where expressive material is at issue, the proper exercise of this discretion is critical. See Vance,445 U.S. at 316, 100 S.Ct. at 1161. See, also, State ex rel. Konstam v. Video Studio, Inc. (Apr. 28, 1994), Richland App. No. 93-CA-38, unreported at 17-18, dismissed 70 Ohio St.3d 1454
(trial court commended for tailoring its closing order to have least restrictive effect on dissemination of First Amendment protected material).
Here, the trial court ordered Rhonemus' entire business closed for one year based upon the rental of two obscene videotapes. The trial court made no attempt to limit its abatement order to the nuisance. This undisciplined application of a nuisance abatement order poses a significant risk to speech protected under the First Amendment. The court now holds that the trial court abused its discretion by issuing an overly broad closing order. The cause must be remanded to the trial court for a new abatement order that is narrowly tailored to the nuisance. Rhonemus' fourth assignment of error is sustained in part.
To summarize this court's decision, the trial court did not err in dismissing Rhonemus' suppression motion or her request for a declaratory judgment. The trial court erred in entering an ex parte temporary restraining order on March 6, 1995, but that error is no longer reversible. The trial court did not err in proceeding with the civil nuisance abatement proceedings, in refusing to empanel an advisory jury, and in concluding that the two videotapes at issue were obscene. The trial court, however, did err in dismissing Rhonemus' Section 1983 complaint against Prosecutor Eckstein. On remand, that complaint must be reinstated. The trial court also abused its discretion by applying its abatement order too broadly. On remand, the trial court must tailor its abatement order to the nuisance. Rhonemus has not directly challenged the trial court's determination that the release provisions of R.C. 3767.04 do not apply to a lessee. This court offers no opinion on that issue.
Judgment affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.
KOEHLER and WALSH, JJ., concur.
[1] In his affidavit attached to his request for the ex parte temporary restraining order, the prosecutor simply stated:
 I viewed ["Black Stockings"] and it contained scenes of male and female participants engaged in cunnilingus, fellatio, and vaginal intercourse and ejaculation.
 I viewed * * * "Everything Butt" [and it] contained scenes of males and females engaged in cunnilingus, fellation, vaginal and anal intercourse and ejaculation. The only difference between the films was the participants and the filming locations. Both films basically contain the exact depictions.
[2] In Urbana, the supreme court stated:
 A jury may well be better equipped for the task of determining contemporary community standards than a judge, since a jury represents a cross section of a community and has a special aptitude for reflecting the view of the average person. There is a close analogy between the function of "contemporary community standards" in obscenity cases and "reasonableness" in other cases. "A juror is entitled to draw on his own knowledge of the views of the average person in the community or vicinage from which he comes for making the required determination, just as he is entitled to draw on his knowledge of the propensities of a `reasonable' person in other areas of the law." Hamling v. United States (1974), 418 U.S. 87, 104-105
[94 S.Ct. 2887, 2901].
[3] Many jurisdictions have found similar one year closing provisions invalid or overbroad as applied. See, e.g., City of Paducah v. Investment Entertainment, Inc. (C.A. 6, 1986),791 F.2d 463, 467; Cornflower Entertainment, Inc. v. Salt lake City Corp. (D. Utah, 1980), 485 F. Supp. 777; People ex rel. Busch v. Projection Room Theatre (1976), 17 Cal.3d 42, 550 P.2d 600, certiorari denied sub nom., Van De Kamp v. Projection Room Theatre, 429 U.S. 922, 97 S.Ct. 320; Sanders v. State (1974)231 Ga 608, 203 S.E.2d 153 (statute permitting abatement on trial court finding that bookstore sold obscene material was overbroad on its face); Jefferson v. Bayou Landing, Ltd. (La. 1977),350 So.2d 158; State ex rel. Field v. Hess (Okla. 1975),540 P.2d 1165 (permanent injunction was overbroad and was modified to enjoin sale of particular works used as exhibits at trial); Ranck v. Bonal Enterprises, Inc. (Pa. 1976), 359 A.2d 748 (law provided too vague a standard for determining line between protected and unprotected speech). But, see, State ex rel. Kidwell v. U.S. Marketing, Inc. (1981), 102 Idaho 451, 631 P.2d 622, appeal dismissed sub nom., U.S. Marketing, Inc. v. Idaho (1982),455 U.S. 1009, 102 S.Ct. 1649 (law providing for a one year closure was intended to penalize past distribution of obscene material and was no more a prior restraint than a fine or imprisonment available after a criminal proceeding).