OPINION
Defendant-appellant, Millville Video, Inc., appeals its conviction of one count of pandering obscenity under R.C.2907.32(A)(2), a fifth degree felony. We affirm.
Millville Video is an Ohio corporation that operates a video store in Millville, Ohio. The video store's "back room" contains videos of a sexual nature. During December 1997, a deputy sheriff entered the store. He purchased two videotapes, Agony of Arianna
and The Story of Ouch, from the store's back room. As a result of this sale, Millville Video was indicted on two counts of pandering obscenity. Count I was based on Agony of Arianna; Count II was based on The Story of Ouch.
Millville Video filed a motion to dismiss the charges. In its motion and the accompanying memorandum, Millville Video argued that Ohio's statute defining obscenity, R.C. 2907.01, violated the United States Constitution. The trial court denied the motion.
The state dismissed Count II, and Millville Video pled no contest to Count I. At the plea hearing, the trial court first advised Millville Video of its rights. Thereafter, the trial court made factual findings and determined that the video, Agonyof Arianna, was obscene under federal and Ohio law. The trial court entered a guilty verdict and ordered Millville Video to pay a $5,000 fine. Millville now appeals its conviction, presenting two assignments of error for our review.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT DENIED MILLVILLE VIDEO'S MOTION TO DISMISS.
Millville Video argues that the Ohio statute defining obscenity, R.C. 2907.01, is facially unconstitutional because it does not incorporate the standard enumerated by the United States Supreme Court in Miller v. California (1973), 413 U.S. 15, 93 S.Ct. 2607. Accordingly, Millville Video contends that the trial court erred when it failed to dismiss the pandering obscenity charge. The state responds that no error occurred, since Ohio's obscenity statute has been interpreted to include Miller's standard, thereby rendering it constitutional.
Noting that state statutes designed to regulate obscene materials must be carefully limited, Miller confined regulation to works that depict or describe sexual conduct. Miller then went on to define the permissible scope of a state's regulation of obscenity. The court formulated a three-part test to determine whether material is obscene and thereby unprotected: (1) whether the average person, applying contemporary community standards, would find that the work, taken as a whole, appeals to the prurient interest; (2) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (3) whether the work, taken as a whole, lacks serious literary, artistic, political or scientific value.Miller at 23-24.
Having so defined what material is considered obscene, the United States Supreme Court allowed state courts to incorporateMiller's standard into already-existing obscenity statutes by "authoritative construction" in lieu of forcing state legislatures to re-enact those statutes. Miller at 24-25. The term "authoritative construction" implies a statutory interpretation by an appellate court of statewide jurisdiction, the highest court in the state, or a state court of last resort. Miller v. RobertEmmett Goodrich Corp. (1974), 53 Mich. App. 267, 273-74,218 N.W.2d 771, 774, affirmed 396 Mich. 253, 240 N.W.2d 242.
The Ohio Supreme Court followed the United States Supreme Court's Miller mandate in State v. Burgun (1978), 56 Ohio St.2d 354, at paragraph one of the syllabus. Burgun construed Ohio's statute defining obscenity, R.C. 2907.01(F), in pari materia withMiller, after noting that it had previously incorporated Miller
into the statute's predecessor.[1] R.C. 2907.01(F) reads:
 When considered as a whole, and judged with reference to ordinary adults or, if it is designed for sexual deviates or other specially susceptible group, judged with reference to that group, any material or performance is "obscene" if any of the following apply:
(1) Its dominant appeal is to prurient interest;
 (2) Its dominant tendency is to arouse lust by displaying or depicting sexual activity, masturbation, sexual excitement, or nudity in a way that tends to represent human beings as mere objects of sexual appetite;
 (3) Its dominant tendency is to arouse lust by displaying or depicting bestiality or extreme or bizarre violence, cruelty, or brutality;
 (4) Its dominant tendency is to appeal to scatological interest by displaying or depicting human bodily functions of elimination in a way that inspires disgust or revulsion in persons with ordinary sensibilities, without serving any genuine scientific, educational, sociological, moral, or artistic purpose;
 (5) It contains a series of displays or descriptions of sexual activity, masturbation, sexual excitement, nudity, bestiality, extreme or bizarre violence, cruelty, or brutality, or human bodily functions of elimination, the cumulative effect of which is a dominant tendency to appeal to prurient or scatological interest, when the appeal to such an interest is primarily for its own sake or for commercial exploitation, rather than primarily for a genuine scientific, educational, sociological, moral, or artistic purpose.
 Burgun held that Miller's test for determining whether material is obscene was incorporated into R.C. 2907.01(F). Burgun at paragraph one of the syllabus. Once authoritatively construed as required by Miller, Ohio's statute adequately protects theFirst Amendment values applicable to the states through theFourteenth Amendment. Id. at 360.
Appellant argues that Burgun's incorporation of Miller's test into R.C. 2907.01(F) was a "one-time dispensation" that allowed the Ohio Supreme Court to overlook accepted rules of statutory construction in order to preserve the statute. Appellant insists that Ohio exhausted its single dispensation in Burgun. Accordingly, appellant argues that numerous legislative reenactments of R.C. 2907.01, after the statute had been authoritatively construed to incorporate Miller, divested the statute of the construction imposed on it by Burgun so that the statute is facially invalid as it stands.
We reject appellant's argument. Recent cases have continued to recognize that Ohio's statutory definition of obscenity must be construed together with the guidelines established in Miller.State ex rel. Eckstein v. Video Express (1997), 119 Ohio App.3d 261,272; State v. Ward (1993), 85 Ohio App.3d 378, 381. We reiterate that R.C. 2907.01(F), as authoritatively construed by the Ohio Supreme Court in Burgun, incorporates the standards established in Miller. Appellant has not cited any substantive amendment to the statute that would have changed the authoritative construction Burgun placed upon it. In the absence of substantive change to the statute, Burgun rendered any additional statutory interpretation unnecessary.
Appellant's argument incorporates the facial overbreadth argument made in Burgun. Appellant contends that the legislature did not explicitly incorporate the language enumerating Miller's
test into the current version of R.C. 2907.01(F). Appellant contends that the statute's disjunctive language, "if any of the following apply," does not incorporate the three prongs ofMiller's test so that material can be considered obscene under R.C. 2907.01 without meeting all three criteria. The result, appellant argues, is that the statute criminalizes mere nudity and violence. Burgun, however, rejected this argument. The Ohio statute was to be construed in pari materia with Miller. The statute's disjunctive language "any" does not prohibit citizens from engaging in protected speech by making it appear to be unlawful.
Although not explicit, each section of R.C. 2907.01(F) appears to incorporate Miller's test. Each specifies that the material must appeal to prurient interest; each contains a description of sexual conduct; and each requires that the work lack serious literary, artistic, political or scientific value. The wording of the entire statute, when construed in pari materia with Miller, adequately protects the First Amendment values applicable to the states through the Fourteenth Amendment. Burgun,56 Ohio St.2d at 360. Following Burgun and reiterating that Miller's test is incorporated within R.C. 2907.01(F), we reject appellant's contention that the statute is either overbroad or facially invalid.
Appellant would also have us infer that the legislature's amendments to R.C. 2907.01, which did not explicitly incorporateMiller's definition of obscenity, amounted to an implicit rejection of Miller while manifesting a "devious intent" to keep citizens from engaging in protected speech. We cannot impute such intent to the legislature. By creating more specific definitions for obscenity, the legislature seems to have manifested an intent to allow citizens freedom to engage in constitutionally protected speech without law enforcement interference. See State v. Wolfe
(1987), 41 Ohio App.3d 119, 123 (legislative comment to R.C.2907.01[F] shows that the statute is intended to spell out what is obscene in greater detail for law enforcement purposes).
We find that the trial court correctly denied appellant's motion to dismiss the charge of pandering obscenity, and therefore R.C. 2907.01(F) is constitutional. Appellant's first assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED AS A MATTER OF LAW IN ITS DETERMINATION THAT THE VIDEOTAPE AGONY OF ARIANNA WAS OBSCENE.
Millville Video argues that the trial court erred in finding Agonyof Arianna obscene. The state responds that the video, which depicts cunnilingus, masturbation, whipping and spanking, and the insertion of items into a woman's vagina, meets both Ohio's definition and Miller's definition of obscenity.
Before finding Millville Video guilty on its no contest plea to pandering obscenity, the trial court made a factual finding thatAgony of Arianna was obscene under both Ohio's definition of obscenity and the Miller test. Nevertheless, the term "obscenity" is a legal term of art, the definition of which is a question of law. State v. Keaton (1996), 113 Ohio App.3d 696, 699. Accordingly, when a trial court finds material to be obscene, this court engages in an independent, de novo review to determine whether the material is constitutionally protected. State ex rel.Pizza v. Strope (1990), 54 Ohio St.3d 41, 45; State v. Radey
(1989), 54 Ohio App.3d 18, 19.
In order to determine whether material is obscene, the court must determine whether the material meets the definition in R.C.2907.01 and complies with the Miller definition of "sexual conduct" that can be prohibited as obscene. Wolfe,41 Ohio App.3d at 125, quoting Turoso v. Cleveland Municipal Court (1982),674 F.2d 486, 492; see, also, Radey, 54 Ohio App.3d at 19. Miller
defined "sexual conduct" to include "sexual acts, normal or perverted, actual or simulated." Wolfe, 41 Ohio App.3d at 121.
In R.C. 2907.01(A)-(C), Ohio's legislature has defined conduct that is sexual in three separate categories — sexual conduct, sexual contact, and sexual activity:
 (A) "Sexual conduct" means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.
 (B) "Sexual contact" means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person.
 (C) "Sexual activity" means sexual conduct or sexual contact, or both.
 Wolfe, 41 Ohio App.3d at 125. The conduct broadly defined as "sexual conduct" in Miller includes the more specific definitions encompassed in 2907.01(A)-(C). Id. Material is obscene if it meets the definitions in any one of these three subsections and R.C. 2907.01(F), which incorporates the Miller test. Wolfe,41 Ohio App.3d at 124. Therefore, Miller's definition of "sexual conduct" equates any one of Ohio's three definitions of "sexual conduct," "sexual contact," or "sexual activity."
In Wolfe, the Tenth District Court of Appeals was called upon to determine whether a videotape similar to Agony of Arianna was obscene under Ohio's definition. After looking to R.C.2907.01(B), which defines "sexual contact" as the touching of an erogenous zone for the purpose of sexual gratification, the Tenth District Court of Appeals noted that acts such as sadomasochism, sexual bondage, or sexual discipline necessarily involve such touching. Wolfe, 41 Ohio App.3d at 125, n. 4. The tape's portrayals of sadomasochism, bondage, and sexual discipline involved sexual conduct and were therefore "obscene." Id. 125. As did the Wolfe court, we look to the videotape to determine whether the acts depicted in it constitute sexual conduct within the broad meaning in Miller and any one of the three definitions in R.C. 2907.01(A)-(C).
Our independent review of Agony of Arianna shows that it contains two vignettes depicting women and men engaged in bondage, sexual discipline, and sadomasochism. In the first vignette, a man binds a woman in a complex series of ropes, then whips her repeatedly and uses various devices to torture her. At the end of the scenario, the man places devices that appear to be tissue clamps on the woman's external genitalia.
The second vignette consists of two women who are also engaged in bondage, sexual discipline, and sadomasochistic acts. The dominatrix binds the victim in a complex series of ropes, places sexual devices in the victim's mouth, and touches the victim's genitals with her hands and other devices. Although it is asserted that the videotape depicts cunnilingus, our independent review of the tape reveals that neither vignette depicts sexual intercourse, fellatio, or cunnilingus between either of the couples.
Nevertheless, we find that the content of the videotape meets the definition of obscenity. As did the Wolfe court, we conclude that R.C. 2907.01(B)'s definition of sexual contact includes acts of sadomasochism, sexual bondage, and sexual discipline. The acts depicted in Agony of Arianna necessarily involve the touching of an erogenous zone for the purpose of sexual gratification, meeting the definition of sexual contact in R.C. 2907.01(B). Wolfe,41 Ohio App.3d at 125, n. 4. Therefore, it is not necessary to determine whether the depictions in the videotape also meet Ohio's definition of sexual conduct as described in R.C. 2907.01(A), as both parties argue.
This court is also satisfied that the material meets the criteria in R.C. 2907.01(F)(1), (2), and (5). The material meets the three guidelines set forth in Miller and incorporated into the statute. The trial court did not err in finding the videotapes obscene. Appellant's second assignment of error is overruled.
POWELL, P.J., and YOUNG, J., concur.
[1] The Ohio Supreme Court incorporated Miller into R.C.2907.01(F)'s predecessors in two cases: Keating v. Vixen (1973),35 Ohio St.2d 215, and State ex rel. Sensenbrenner v. Book Store
(1973), 35 Ohio St.2d 220.