DISSENTS SAYING:
 {¶ 34} I respectfully dissent from the majority's holding that this Court cannot address the merits of Appellant's argument because the appellate record is incomplete. What is painfully obvious when reading the transcript of the trial court proceedings is that much of the so-called evidence regarding the charge of pandering obscenity involving a minor was never identified by an exhibit number and never actually admitted into evidence. In fact it is not even clear that this so called evidence was ever actually shown to the jury during the trial. Witnesses testify as to the titles of certain video clips and still photographs allegedly on the computer's hard drive. But the transcript of such testimony does not reflect that once the title was noted by the witness the file was ever shown on the computer monitor or other video display for the jury.
 {¶ 35} Moreover, neither the attorneys nor the court are clear about the evidence that could be legitimately considered by the jury. I agree that the state's witnesses refer to other evidence and that the trial court indicated that the jury could consider four pieces of evidence. However, three of the items sent to the jury as evidence[8]
were never given separate exhibit numbers for the purpose of identification. Of those three, one was described by witnesses as a nineteen second video clip showing two young girls in bed, naked from the waist down. Though not given an exhibit number, the nineteen second video of these two girls was titled: "Little girl displays her sweet young cunt to her sister." It was offered and admitted into evidence without objection. It was not, however, copied onto a separate disc or marked with an exhibit number. The other two items of evidence were never copied onto a separate disc, never given an exhibit number, and never offered into evidence. Thus, the only evidence relevant to the charge of pandering obscenity involving a minor that was actually marked separately as an exhibit and properly admitted into evidence was State's Exhibit 7, a still photograph of a male touching the upper thighs of a young girl as he pulled down her underwear.
 {¶ 36} The state marked Appellant's computer and monitor as State's Exhibits 1 and 2, and these were admitted into evidence without objection. However, the hard drive on the computer contained a great deal of irrelevant and prejudicial information, including a "snuff film" (a depiction of a female being shot in the head) and other material that could be classified as obscenity depicting adults.
 {¶ 37} I further note that while there was specific testimony describing the conduct contained in the nineteen second video clip and the still photograph marked as State's Exhibit 7, there was no testimony describing the actual conduct depicted on the remaining so-called evidence. While State's Exhibit 7 was a hard copy of a still photograph also on the computer hard drive, it was the only data separately reduced to hard copy and marked with an exhibit number. It strains credulity to believe that if the other so-called evidence actually contained depictions of the conduct required for a conviction under the jury charge in this case, the witnesses would have testified as to the specific activity, it would have been reduced to a hard copy, marked as an exhibit and offered into evidence. Moreover, the prosecutor would have argued such specific evidence at closing, rather than just referring to the titles. I note also that the prosecutor did not argue that State's Exhibit 7 actually satisfied the essential elements of the charge of pandering obscenity involving a minor as that offense was explained to the jury.
 {¶ 38} I submit that the appellate record is complete and that this Court can properly review the merits of Appellant's arguments in his second assignment of error. For reasons that follow, I would reverse Appellant's conviction on the pandering charge as against the manifest weight of the evidence under the specific jury charge as given. Having reversed the pandering conviction, I would find that the conviction of possession of criminal tools must also be reversed.
 {¶ 39} This case presents itself as does a wolf in sheep's clothing.
 {¶ 40} Relying on our prior decision in State v. Ward (1993),85 Ohio App.3d 378,[9] Appellant has contended that the jury verdict convicting him of a violation of R.C. 2907.321(A)(5) is, among other asserted errors, against the manifest weight of the evidence. Appellee counters by reciting the provisions of R.C. 2907.321(A)(5) (possession of obscene material depicting children) and R.C. 2907.01(F) (definition of obscene). There is no dispute over the controlling statutory provisions. It is the application of these provisions under the facts of this case that is at issue.
 {¶ 41} Ohio Jury Instructions ("OJI"), specifically section 507.321, provides an accurate and complete jury charge relevant to prosecution under R.C. 2907.321. But the jury was not instructed under OJI 507.321. Moreover, neither party preserved by objection or assigned any error regarding the actual jury charge in this case. Accordingly, my initial review focused on an analysis of the law as set forth in State v. Radey
(1989), 54 Ohio App.3d 18, appeal dismissed (1990), 52 Ohio St.3d 87, andWard as applied to the facts of this case. For the reasons that follow, had the jury been instructed under OJI 507.321, I would have affirmed the verdict and urged my brethren to overrule Radey and Ward on the grounds that both cases misread the requirements of Miller v. California (1973),413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419, and State v. Burgun (1978),56 Ohio St.2d 354, and misinterpreted Ohio's legislative scheme for the protection of children from sexual exploitation.
 {¶ 42} As previously discussed, the trial court did not charge the jury using OJI 507.321. Instead, it gave an instruction that on its face appears to have been expressly written to meet the holdings of Radey andWard. The trial court instructed the jury as follows:[10]
"Before you can find [Appellant] guilty you must find beyond a reasonable doubt that on or about the 10th day of August, year 2001, Medina County Ohio [Appellant], with knowledge of the character of the material bought, procured, possessed, controlled obscene material that had a minor as one of its participants. That's the charge. Now let's define some of those terms for you.
"* * *
"The following three-part test is to be used to determine whether the work is obscene. A, whether the average person applying contemporary community standards would find that the work taken as a whole appeals to prurient interest.
"And B, whether or not the work depicts or describes in a patently offensive way * * * [s]exual conduct specifically defined by the applicable state law. And C, whether the work, taken as a whole, lacks serious literary, artistic, political or scientific value.
"Prurient interest is a shameful or morbid interest in nudity, sex or excretion which goes substantially beyond customary limits of candor in description or representation of such matters. Whether a work appeals to the prurient interest or depicts sexual conduct in a patently offensive way is governed by contemporary community standards. In [contrast], the reasonable person standard is used to determine whether a work has literary, artistic, political, or scientific value. To be patently offensive, a work must depict or describe hard core sexual conduct.
"What is sexual conduct? Sexual conduct means vaginal intercourse between a male and female, anal intercourse, fellatio, cunnilingus between persons regardless of sex without privilege to do so, the insertion, however slight, of any part of the body, instrument, apparatus, object into the vagina or anus. Penetration, however slight, is sufficient to complete vaginal, anal intercourse.
"Fellatio means a sexual act committed with the penis and the mouth.
"Cunnilingus means sexual act committed with the mouth and the female sex organ."
 {¶ 43} Thus, under the Radey/Ward instruction the jury could only convict if it was convinced beyond a reasonable doubt that the materials possessed by Appellant depicted a minor engaged in vaginal intercourse, anal intercourse, fellatio and/or cunnilingus. My review of the properly admitted evidence is that there is no evidence of these four specific sex acts. Thus on the record before me I have no alternative but to reverse Appellant's convictions on the ground that the verdict is against the manifest weight of the evidence under the actual jury charge given.
 {¶ 44} However, I cannot stop there. I am required by the compelling state interest so clearly presented in New York v. Ferber
(1982), 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113, to lift the sheep's clothing and expose the wolf inside. What follows is dicta only, but I cannot in good conscience remain silent or further perpetuate the misunderstanding of Miller inherent in Radey[11] and Ward.[12] To do so would be to leave vulnerable children exposed to forms of sexual exploitation that fall short of vaginal intercourse, anal intercourse, fellatio and/or cunnilingus — a result surely not intended by the General Assembly. Nor should this appellate court turn its back and wring its hands helplessly under the guise of stare decisis. It is not a little ironic that my view of Miller in the case sub judice was previously set forth, in part, in 1987 (two years before Radey) by the Tenth District Court of Appeals in State v. Wolfe (1987), 41 Ohio App.3d 119, a prosecution under R.C 2907.32 involving obscene depictions of adults. TheRadey court certified a conflict with Wolfe, but the certification was dismissed by the Ohio Supreme Court. See Radey (1987), 52 Ohio St.3d 87. I act now to reject what I perceive to be most unfortunate precedent in Ninth District obscenity law.
 {¶ 45} I begin at the beginning with Miller — the supposed genesis of the "hard core/sexual conduct" limitation first engrafted into Ninth District law by Radey. Miller articulated a three-part test for judging whether material is obscene. See Miller, 413 U.S. at 24. The first and third prongs of that test are not relevant to the case sub judice. But, it is worth noting that the issue before Miller was the third prong — the so-called "social utility prong." Miller
abandoned the "utterly without redeeming social value" test set forth inMemoirs v. Massachusetts (1966), 383 U.S. 413, 86 S.Ct. 975,16 L.Ed.2d 1, for the" [without] serious literary, artistic, political, or scientific value" approach that remains the law. Miller, 413 U.S. at 24.
 {¶ 46} Miller declared the constitutionality of California Penal Code Section 311(a) which prohibited obscenity defined as follows:[13]
"(a) `Obscene' means that to the average person, applying contemporary standards, the predominant appeal of the matter, taken as a whole, is to prurient interest, i.e. a shameful or morbid interest in nudity, sex, or excretion, which goes substantially beyond customary limits of candor in description or representation of such matters and is matter which is utterly without redeeming social importance." Miller, 413 U.S. at 18, n. 1.
 {¶ 47} Miller is replete with analysis of the history of obscenity law and makes it clear that the constitutional reach of such laws permits state regulation of more than just explicit sexual behavior as defined in R.C. Section 2907.01(A) (vaginal intercourse, anal intercourse, fellatio and/or cunnilingus). For example, Miller endorsed the broader scope of such regulation permitted in Roth v. United States (1957), 354 U.S. 476,77 S.Ct. 1304, 1 L.Ed.2d 1498, when it noted the following:
"We note, therefore, that the words `obscene material,' as used in this case, have a specific judicial meaning which derives from the Roth case, i.e., obscene material `which deals with sex.'" (Citations omitted.)Miller, 413 U.S. at 18, n. 2.
 {¶ 48} Citing to Roth, the Miller court further noted that: "This Court has defined `obscene material' as `material which deals with sex in a manner appealing to prurient interest[.]'" Miller, 413 U.S. at 18, n. 2.
 {¶ 49} The materials at issue in Miller were sexually explicit depictions of adults "engaging in a variety of sexual activities, with genitals often prominently displayed." Miller, 413 U.S. at 18. The opinion does not make clear the precise nature of the sexual behaviors depicted, but neither does it preclude the criminalization of a broader range of sexual expressions than that encompassed in Ohio's definitions of sexual conduct in R.C. 2907.01(A).[14] To the contrary, in the second prong of its test the Miller court leaves it up to the states to define the specific sexual behavior proscribed. The court goes on to note as follows:
"We emphasize that it is not our function to propose regulatory schemes for the States. That must await their concrete legislative efforts. It is possible, however, to give a few plain examples of what a state statute could define for regulation under part (b) of the standard announced in this opinion[:]
"(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.
"(b) Patently offensive representations of descriptions of masturbation, excretory functions, and lewd depiction of the genitals."Miller, 413 U.S. at 25.
 {¶ 50} While Miller does say that "for the first time since Roth was decided in 1957, a majority of this Court has agreed on concrete guidelines to isolate `hard core' pornography from expression protected by the First Amendment" it does not define that term in a restrictive way. Miller, 413 U.S. at 29. In fact, later in the opinion the court impliedly gives "hard core" an expansive and general definition consistent with Roth's definition of obscene materials as those dealing with sex in a prurient way. The court notes: "But the public portrayal of hard-core sexual conduct for its own sake, and for the ensuing commercial gain, is a different matter." Miller, 413 U.S. at 35.
 {¶ 51} Footnote 15 further provides:
"In the apt words of Mr. Chief Justice Warren, appellant in this case was `plainly engaged in the commercial exploitation of the morbid and shameful craving for materials with prurient effect. I believe that the State and Federal Governments can constitutionally punish such conduct. * * *'" Miller, 413 U.S. at 35, n. 15.
 {¶ 52} It is significant that Miller gives a non-exhaustive list of examples. I submit that the Ohio Legislative scheme regarding obscenity regulates sexual expressions which portray the so called "ultimate sex acts"[15] of vaginal intercourse, anal intercourse, fellatio and cunnilingus as well as other less "ultimate" sexual expressions such as the touching of another's erogenous zone and other conduct more generically described as "sexual contact" in R.C. 2907.01(B). I also submit that a full reading of R.C. 2907.01(F) (provision defining the obscene) also makes it clear that Ohio has specifically regulated not only the conduct which might also fall within the definitions of "Sexual Conduct" (R.C. 2907.01(A)) and "Sexual Contact" (R.C. 2907.01(B)) but also other lesser expressions, including those that are the functional equivalent of Miller's second example of material that may properly be regulated, i.e., masturbation, excretory functions, and lewd exhibition of the genitals.
 {¶ 53} It is indeed perplexing to read Radey's conclusion that obscenity is restricted to only those sexual expressions set forth in R.C. 2907.01(A), i.e., "sexual conduct" — vaginal intercourse, anal intercourse, fellatio, and/or cunnilingus. Had Miller intended such an aberration it would not have given as permissible examples behaviors which so clearly fall outside of Ohio's definition of "sexual conduct."
 {¶ 54} Perhaps the Radey court was mislead by the fact that Miller
used the phrase "hard core sexual conduct" in its opinion. I submit that the term "hard core sexual conduct" does not limit the examples provided in Miller. Rather, as set forth in Wolfe, the examples give meaning to the court's use of the words "hard core sexual conduct." I submit that R.C. 2907.321 and R.C. 2907.01(F) in their entirety is the applicable law in Ohio — referred to in Miller prong (b) it is the "hard core sexual conduct" as set forth in state law.
 {¶ 55} Moreover, had Miller been somehow prescient enough to know that Ohio had an express definition of "sexual conduct" for use in many criminal statutes,[16] still the argument cannot be successfully made that Ohio intended to limit its regulation of obscenity to only that which it defined as "sexual conduct" in R.C. 2907.01(A). The Ohio statute defining obscenity, R.C. 2907.01(F), applies equally to depictions of adults and minors and is implemented through R.C. 2907.32 (provision applying to the depiction of adults) and 2907.321(provision applying to the depictions of minors).[17] R.C. 2907.01(F) clearly includes all forms of obscene expression including activity ranging from "ultimate sex acts" such as vaginal intercourse, anal intercourse, fellatio and cunnilingus to other behaviors, including nudity, sexual excitement, masturbation, bestiality, lust, scatological displays, etc., provided the material otherwise satisfies prongs (a) and (c) of the Miller test.[18]
 {¶ 56} If the Radey/Ward instruction were to be viewed as correct law it would wipe out, rather than implement, the full range of conduct that can be regulated according to Miller prong (b). The Ohio Supreme Court in Burgun did not intend to so decimate Ohio obscenity law when it held that Ohio obscenity provisions were to be read in pari materia withMiller. To the contrary, Burgun commented upon the specificity with which R.C. 2907.01(F) met the standards in Miller noting that "a close reading of R.C. 2907.01 in its entirety shows that the statute is not vague but rather extremely precise in defining what conduct is prohibited."Burgun, 56 Ohio St.2d at 361. Burgun further noted that the United States Supreme Court did not intend for every state legislature to rewrite its obscenity provisions as a result of Miller, and further reinforced the importance of Roth to the General Assembly by reference to committee notes which provide:
"The definition of obscenity [in 2907.01(F)] is designed to meet the requirements of Roth v. United States * * *, and cases following in its wake. It spells out what is `obscene' in much greater detail than existing case law, in order to increase the utility of the definition for law enforcement purposes." Burgun, 56 Ohio St.2d at 360, n2.
 {¶ 57} Burgun held that 2907.01(F) was not unconstitutionally overbroad nor void for vagueness when read in pari materia with Miller.Burgun, 56 Ohio St.2d at paragraph one of the syllabus. If presented with the restrictive interpretation of Ohio obscenity law adopted byRadey/Ward it is my opinion that the Burgun court would not have concluded that only depictions of vaginal intercourse, anal intercourse, fellatio and/or cunnilingus could be regulated in the context of Miller.
 {¶ 58} Lest there be any doubt about the continuing viability of the Miller examples of conduct that may be regulated, I have reviewed United States Supreme Court decisions subsequent to Miller. One year after Miller, Jenkins v. Georgia (1974), 418 U.S. 153, 160,94 S.Ct. 2750, 41 L.Ed.2d 642, referred to Miller's examples of "hard core sexual conduct" and noted that in Miller it took pains to give examples of what a state could define for regulation under part (b) of Miller, i.e., what would be considered as "hard core sexual conduct." The Jenkins Court explained Miller's examples this way:
"These examples included `representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated,' and `representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals.' * * * While this did not purport to be an exhaustive catalogue of what juries might find patently offensive, it was certainly intended to fix substantive constitutional limitations * * * on the type of material subject to such a determination. It would be wholly at odds with this aspect of Miller to uphold an obscenity conviction based upon a defendant's depiction of a woman with a bare midriff, even though a properly charged jury unanimously agreed on a verdict of guilty." Jenkins, 418 U.S. at 160-161.
 {¶ 59} In 1977, in Smith v. United States (1977), 431 U.S. 291,301, 97 S.Ct. 1756, 52 L.Ed.2d 324, the Court again endorsed the Miller
examples and referred to them as "hard core." Smith recognized that the states have great leeway in what they may regulate. Id. at 302. TheSmith court noted that at the time of Miller, Iowa had no obscenity law that would criminalize any adult conduct. Id. At the other extreme,Smith recognized that a state might seek to regulate all the hard-core pornography that it constitutionally could, further noting that the new Iowa law which regulated only material "depicting a sex act involving sado-masochistic abuse, excretory functions, a child, or bestiality" provided an example of an intermediate approach. Id. at 303.
 {¶ 60} I come, now to the case of Ferber, which lays down important new law regarding the protection of children from sexual exploitation.Ferber framed the issue as follows: "We believe our inquiry should begin with the question of whether a State has somewhat more freedom in proscribing works which portray sexual acts or lewd exhibitions of genitalia by children." Ferber, 458 U.S. at 753.
 {¶ 61} For important public policy reasons, the Ferber court rejected the application of Miller prongs (a) and (c) to statutes which criminalize the distribution of material depicting children engaged in sexual conduct. Ferber, 458 U.S. at 764-765. The Ferber court used the phrase "sexual conduct" in a generic way and not as limited by R.C.2907.01(A). Ferber required that the sexual conduct proscribed must be suitably limited and described, but emphasized that the test for child pornography is separate from the obscenity standard in Miller. Ferber,458 U.S. at 761. The court in Ferber upheld a New York statute which prohibited depictions of children engaged in actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, sado-masochistic abuse, or lewd exhibition of the genitals. Moreover, the court in Ferber noted that Miller expressly included lewd depiction of genitalia as the kind of conduct that could be proscribed.
 {¶ 62} In the course of its analysis the United States Supreme Court in Ferber noted that "[the] prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." Ferber, 458 U.S. at 757. It further indicated that it would not second guess the intent of the New York legislature when it enacted the provision at issue. It opined that the Miller standard, "like all general definitions of what may be banned as obscene, does not reflect the State's particular and more compelling interest in prosecuting those who promote the sexual exploitation of children." Ferber,458 U.S. at 761.
 {¶ 63} Accordingly, I submit that even if Radey and Ward are viewed as viable interpretation of Ohio obscenity law when viewed in pari materia with Miller (an interpretation I reject), such an interpretation cannot survive Ferber. I submit that if Miller could be read into R.C.2907.321 and R.C. 2907.01(F) it can just as easily be read out of these provisions and Ferber substituted in its place. Were we to substituteFerber for Miller in our interpretation of R.C. 2907.321 and R.C.2907.01(F) our only inquiry would be whether the conduct proscribed was sufficiently specific and not void for vagueness. Any language in R.C.2907.01(F) invoking prongs (a) and (c) of the Miller three prong test would be disregarded, leaving a proscription against less egregious (but nonetheless equally damaging to child victims) depictions of specific conduct not set forth or otherwise proscribed in R.C. 2907.322 or R.C.2907.323. While such an interpretation does not on its face look tidy, nothing in Miller or Ferber require that the specific conduct be set forth all in one statute or one paragraph within a single statute. Without Miller, R.C. 2907.321 and R.C. 2907.01(F) would be judged solely by the requirements in Ferber. I submit that the specific conduct proscribed therein is well within the contemplation of Ferber. While it might be tidier for the General Assembly to re-write its statutes protecting the sexual exploitation of children (R.C. 2907.321, R.C.2907.322, and R.C. 2907.323) Burgun indicates a rewrite is not necessary. Burgun, 56 Ohio St.2d at 358. After replacing Miller withFerber, R.C. 2907.321 and R.C. 2907.01(F) become hybrids more appropriately described as prohibiting the possession or distribution of child pornography and not a traditional obscenity statute. To what extent the courts might interpret and apply the language remaining in R.C.2907.321 and 2907.01(F), formerly implicating prongs (a) and (c) of theMiller test, remains to be seen. In his concurring opinion in State v.Meadows (1986) 28 Ohio St.3d 43, (affirming the constitutionality of R.C. 2907.322 which prohibited the mere possession of prohibited materials depicting a minor), Justice Douglas compared R.C. 2907.321(A)(5) and R.C. 2907.322(A)(5) and noted the latter prohibits depictions of minors involved in specific acts without the qualification that such acts be obscene. Thus R.C. 2907.321(A)(5) which prohibits a broader range of material depicting minors and which requires that prongs (a) and (c) of the Miller test be satisfied thereby requiring that the conduct depicted be obscene could be preserved as a separate offense with different elements of proof.
 {¶ 64} In Osborne v. Ohio (1990), 495 U.S. 103, 110 S.Ct. 1691,109 L.Ed.2d 98, paragraph one of the syllabus, the court reviewed and upheld as constitutional R.C. 2907.323(A) which prohibited the possession of material depicting a child "in a state of nudity." "Nudity" as defined in R.C. 2907.01(H) had previously been constitutionally construed by the Ohio Supreme Court in State v. Young (1988), 37 Ohio St.3d 249, paragraph one of the syllabus, as including only depictions involving a "lewd exhibition or involves a graphic focus on [a minor's] genitals." Such an interpretation of "nudity" as applied to prosecutions under R.C. 2907.323
informs us on the meaning of "nudity" as used in Ohio's obscenity provisions, R.C. 2907.321 and R.C. 2907.01(F). However conceptualized, whether under R.C. 2907.323, R.C. 2907.321, or R.C. 2907.01(F), the Ohio provisions for protection of children from sexual exploitation include a range of proscribed activity, including nudity as construed by the Ohio Supreme court in Young. The Young construction of "nudity" is expressly incorporated into OJI 507.321.
 {¶ 65} Even if the Miller test remains incorporated into R.C.2907.321 and R.C. 2907.01(F), properly construed it is no impediment to a conviction of Appellant under R.C. 2907.321 had the complete jury instruction set for in OJI 507.321 been given to the jury. R.C. 2907.01(F) expressly proscribes "sexual activity" and "nudity." "Sexual activity" is defined as including "sexual conduct" (R.C. 2907.01(A) — the four ultimate sex acts) and "sexual contact" (R.C. 2907.01(B) — sexual touching with or without nudity). The separately marked and properly admitted evidence includes State's Exhibit 7, a photograph of an adult male touching the thighs of a young girl as he pulls down her underwear exposing her pubic area. The man's face is shown in the photograph near the child's pubic area. Given this evidence, a reasonable jury instructed under OJI 507.321 could have found the defendant guilty under R.C. 2907.321
(applying the definitions of "nudity" and/or "sexual contact") had it also found the material to make a dominant appeal to the prurient/scatological interest (Miller prong (a)) and to be without serious artistic scientific, educational, sociological, moral or artistic purpose (Miller prong (c)).
 {¶ 66} The foregoing analysis makes it clear that if we look only at the sheep's clothing (Radeyem>/Ward's simplistic adoption of a limiting definition of "sexual conduct") we miss the wolf inside. Wolfe got it right and Ferber and Osborne only reinforce that conclusion. Had the jury been properly instructed using OJI 507.321, I would have affirmed the verdict and overruled Radey and Ward.
[8] The three items not specifically marked as evidence are: 1) a nineteen second video clip depicting two young girls in a state of undress; 2) an unidentified still photograph; and 3) a video clip entitled "16 yr old-boyfriend having sex."
[9] In Ward, this Court relied on our prior holding in State v. Radey
(1989), 54 Ohio App.3d 18, in concluding that the materials at issue were not obscene. See discussion infra.
[10] For ease of reference we shall refer to this charge as theRadeyem>/Ward instruction.
[11] Radey was a prosecution under R.C. 2907.32(A)(2), pandering obscenity where the material depicted adults. Purporting to apply theMiller test, the Radey court limited the behavior that could be proscribed to depictions of adults engaged in patently offensive "hard core" sexual conduct. Radey, 54 Ohio App.3d at 21. It further limited sexual conduct to the four ultimate sex acts: vaginal intercourse, anal intercourse, fellatio and cunnilingus. In reaching this conclusion theRadey court relied upon a change in Ohio's definition of sexual conduct after Miller. Before Miller, R.C. 2905.34(D) defined "sexual conduct" to include "masturbation, homosexuality, lesbianism, sadism, masochism, natural or unnatural sexual intercourse, or physical contact with a person's clothed or unclothed genitals, pubic area, buttocks, or, if such person is a female, a breast." Radey, 54 Ohio App.3d at 20. I note that such a definition incorporated post-Miller sexual behaviors as defined in R.C. 2907.01(A) and R.C. 2907.01(B). After Miller, Ohio defined sexual conduct in R.C. 2907.01(A) as "vaginal intercourse between a male and female, and anal intercourse, fellatio, and cunnilingus between persons regardless of sex[.]" As more fully set forth infra, I submit that theRadey court ignored the post-Miller definition of sexual expressions defined in R.C. 2907.01(B) as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttocks, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person" in the mistaken belief that Miller's use of the phrase "sexual conduct" in part (b) of its test, meant only the four ultimate sex acts set forth in R.C.2907.01(A).
[12] Ward was a prosecution under R.C. 2907.321, pandering obscenity where the material depicted minors. Relying on Radey, the Ward court again limited the behavior that could be proscribed to the four ultimate sex acts set forth in 2907.01(A).
[13] Such language is virtually identical to the language employed by the Ohio Supreme Court when construing the word "prurient" as used in R.C. 2907.01(F) and does not limit its application to behavior depicting any particular sexual expression, let alone to vaginal intercourse, anal intercourse, fellatio or cunnilingus — or other supposedly "hard core" depictions of sexuality. "Prurient interest" is defined in Ohio as "not the same as a candid, normal or healthy interest in sex, rather it is a `shameful or morbid interest in nudity, sex, or excretion * * * [which] goes substantially beyond limits of candor in description or representation of such matters * * *.'" (Alterations sic.) Urbana exrel. Newlin v. Downing (1989), 43 Ohio St.3d 109, 116, quoting Roth,354 U.S. at 487, n. 1.
[14] Miller's use of the phrase "sexual activity" is, I believe, only a generic description of sexual behavior or sexual expressions. However, if construed literally (as did Radey when construing the phrase "sexual conduct" as limited to sexual expressions defined in R.C. 2907.01(A)(1)), "sexual activity" as defined in R.C. 2907.01(C) would mean both "sexual conduct" (R.C. 2907.01(A)) and "sexual contact" (R.C. 2907.01(B)). Thus under the Radey framework the materials that could be regulated would not be limited to just "sexual conduct" (R.C. 2907.01(A)) but would also include "sexual contact" (R.C. 2907.01(B)).
[15] Miller's first example of what may be regulated makes express reference to "ultimate sex acts." See Miller, 413 U.S. at 25.
[16] R.C. 2907.322 is but one such example where the proscribed conduct is "sexual activity" with a minor. Sexual activity is then further limited by R.C. 2907.01(A) ("sexual conduct") and R.C. 2907.01(B) ("sexual contact").
[17] The only difference between these two statutes is the punishment imposed. A violation of R.C. 2907.32 is punishable as a fifth degree felony and enhanced to a fourth degree felony if there is a prior conviction. R.C. 2907.321(A)(5) possession of obscene material involving a minor is punishable as a fourth degree felony, with an enhancement to a third degree felony.
[18] R.C. 2907.01(F) provides that depictions (whether of adults or children) must meet such prongs of the Miller test. It imposes a community standard, which requires that the material be considered as a whole, and that its dominant appeal be to the prurient or scatological interest. It also provides that such an interest be primarily for its own sake or for commercial exploitation, rather than primarily for a genuine scientific, educational, sociological, moral or artistic purpose. R.C.2907.01(F)(1)-(5). In addition, R.C. 2907.321(B)(1) provides for a proper purpose exception as an affirmative defense.